[Civ. No. 3909. Second Appellate District, Division One.—July 5, 1922.]

## BESSIE GOLD, Respondent, v. GROVER C. PHELAN et al., Appellants.

[1] Vendor and Vendee—Possession by Vendee.—A vendee under a contract of sale is not entitled to immediate possession of the property unless there is a valid contract and it is expressed therein or plainly inferable from some term thereof, or it appears from surrounding circumstances that the vendee is to have such right.

[2] Broker's Commissions — Scope of Authority of Broker. — The authority of a real estate broker is only to produce a purchaser who is willing to contract with the seller upon the terms prescribed, and he has no authority to execute any agreement binding either of the parties to the transaction, nor has he the right to accept money offered by the purchaser to conclude the sale, and when the pur-

chaser pays money into the hands of the broker in such a case, the broker holds it as the agent of the purchaser and not the seller, and any misappropriation thereof is at the loss of the former.

[3] ID.— UNAUTHORIZED ACTS OF BROKER — EFFECT OF. — Where an owner authorized a real estate broker merely to sell her property, and the broker without her knowledge sold the property and accepted a deposit, the owner was not bound by the act of the agent nor did she confirm such act by later signing a contract for the sale of the property.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles S. Crail, Judge. Affirmed.

The facts are stated in the opinion of the court.

Merriam, Rinehart & Merriam for Appellants.

Hocker & Austin for Respondent.

JAMES, J.—This is a summary proceeding brought to obtain possession of a house and premises which plaintiff alleged she was the owner of and which she alleged defendants forcibly detained in the manner described in section 1160 of the Code of Civil Procedure. By the judgment possession of the property was directed to be delivered to plaintiff, and it was provided that the defendants pay damages in the sum of $224.14, with costs. From that judgment the defendants have appealed.

The main contention urged on this appeal is that the findings of the court are not sustained by the evidence. It appears from the testimony set forth in the record that early in the month of April, 1921, Ted Elliot was a real estate broker doing business in the city of Pasadena. There were several salesmen attached to his office. One of these, Randall, was known to the plaintiff as a customer in her husband's store. Plaintiff was the owner of a house and lot. The house was furnished and rented to a tenant. There was a mortgage encumbrance against the property of $1,200. Plaintiff testified that she told Randall, about two months before the making of the alleged sale hereinafter referred to, to "sell the property"; that the price was $3,500, and that the conditions were that at least $1,000 in cash should be paid by the purchaser and that the re-

maining amount ($1,300) might be paid in installments of $30 per month, the purchaser to assume the mortgage indebtedness of $1,200. She testified that about the 12th of April a man named Holway, who was another salesman attached to the Elliot office, came to her place and said: "Don't you know, Mr. Randall, he sold your house." Plaintiff accompanied Holway to Elliot's office, where she met the two defendants and Ted Elliot. Elliot's office had already accepted checks from the proposed purchasers (defendants) in the amount of $1,000. At this meeting of the parties an alleged contract of sale was drawn up. This writing was awkwardly phrased and quite indefinite in many of its statements. For the purposes of this decision it may be treated as sufficiently expressing the intent of the parties and binding terms. Plaintiff and the defendants attached their signatures to the document as approving its contents, although the plaintiff testified that she could not read it as she did not know how to read. It may be assumed, however, that she was made to understand the contents of the agreement in so far as an intelligent person might be able to construe the contract. The preliminary portion of the agreement was as follows: "We, the undersigned as agents, have this date received from Grover C. Phelan and Emma H. Phelan the sum of One Thousand ($1000.00) Dollars, lawful money of the United States, being a deposit and part payment on account of a Bargain and Sale made from Bessie Gold hereinafter known as the Seller, to G. C. Phelan and E. H. Phelan hereinafter known as the Buyer, of a certain lot, tract or parcel of land lying, situate and being in the City of Pasadena County of Los Angeles, State of California, bounded and particularly described as follows, to-wit: No. 245 Penn St., Pasadena, California." After setting forth the terms, which included the statement "$1000 cash," the agreement proceeded to recite the following: "Seller agrees to give a good title to the hereinafter described property or no sale. Taxes for the current years to be paid by buyer. Buyer agrees to pay all assessments levied subsequent to date hereof. The deposit received this date will be deposited in escrow to the credit of said Seller. We the undersigned demand the Ted Elliot Co. of Pasadena to act as escrow agents and the Buyer and Seller agree to give said Ted

Elliot Co. of Pasadena, their written escrow instructions within three 3 days from date hereof. Seller agrees to pay Ted Elliot Co. 3% of Purchase Price Dollars commission. If the remaining payments be not made according to this Agreement and Contract, the above mentioned deposit will be forfeited without recourse. If the title proves defective or in case this Contract is not fulfilled by the Seller said deposit to be returned.'' Plaintiff immediately after signing the contract deposited with Elliot some papers, presumably a certificate of title and possibly a deed (as to which the record does not show clearly). Elliot collected the $1,000 paid by the defendants, by depositing checks given by them, to his account, and within a few days thereafter absconded and embezzled this money. Plaintiff was immediately advised by Randall to place her papers in escrow elsewhere, but after taking legal advice she took the documents away from the Elliot office and retained them in her own custody, where they thereafter remained. The defendants had timely notice both of the fact that Elliot had embezzled the $1,000 and of the fact that plaintiff had taken away the papers which she had deposited in pursuance of the escrow agreement. The contract of sale contained another term which has not been quoted hereinbefore. That term, referring to the payment of the remainder of the purchase price amounting to $1,300,

Mortgage

provided that the ''buyer gives a Trust Deed to ($1300) to Bessie Gold payable at $30 or more per months interest at 7% included and $1200 Mortgage.'' Being fully advised of all these matters and without offering to make any payment whatsoever to the plaintiff or to execute a mortgage or trust deed, the defendants went to the house which they proposed to purchase of the plaintiff and, finding that the tenants had moved out, they entered through a rear door and took possession. The furniture of plaintiff, with which the house was supplied, they stacked in one room and several months later caused it to be transported to a warehouse.

Whatever the authority of Elliot as agent may be said to have been, that authority was plainly revoked when, after the embezzlement of the money occurred, plaintiff withdrew her papers from the office of the escrow-holder.

After Elliot left, for a period of about a month the attachés continued to maintain the office, paying the rent out of their own pockets, but it is plain enough that the business conducted by them was not the business of Ted Elliot. However, with full notice of the conditions which have been referred to, these defendants, after taking possession of plaintiff's house, delivered to Holway several checks for $30 each which they claimed were in payment of the installments as they became due on the purchase price of the property. Two of these checks were offered to the plaintiff, who refused to accept them. Upon learning that the defendants had, without her consent, moved into the house, plaintiff made demand for possession of the house and premises, which demand was refused. Defendants continued to occupy the house, and this action was brought in September, 1921. The rental value was shown to be about $50 or $60 per month. No question is made as to the damages awarded being of a proper amount, assuming the right of the plaintiff to recover in the action.

[1] The appeal of defendants rests wholly upon the claim that a vendee, under an agreement of sale affecting real property, is given the right to take possession on the execution of the agreement. A number of authorities are cited as supporting this contention. These decisions proceed upon two assumptions, both of which must be present in order that the conclusion announced shall be sustained: (1) That a subsisting legal agreement to sell and purchase has been made; (2) That the intent of the parties that the buyer shall have the right to immediate possession shall be expressed or be plainly inferable from some term of the contract or the surrounding circumstances shown in evidence. In this case the plaintiff denied that she consented to give the defendants possession pending the conclusion of the sale, or that that matter was the subject of conversation between them. The alleged contract of sale contains no language indicating that possession was to be delivered to the buyer in advance of the performance of all of the acts necessary to complete the escrow. There is another reason which is conclusive against any right in the defendants to have possession of the property. The $1,000 which was agreed to be paid as the initial payment never passed into the hands of the plaintiff, nor into the

hands of her agent. **[2]** The authority of a real estate broker is only to produce a purchaser who is willing to contract with the seller upon the terms prescribed. Such a broker has no authority to execute any agreement binding either of the parties to the transaction, nor has he the right to accept money offered by the purchaser' to conclude the sale. And when the purchaser pays money into the hands of the broker in such a case, the broker holds it as the agent of the purchaser and not the seller, and any misappropriation thereof ˙ would necessarily be at the loss of the former and not the latter. (1 Mechem on Agencies, 2d ed., secs. 797, 814.) And authority to do acts other than have been assigned to the broker will not be inferred, even though the seller has used such terms as ''for sale'' or ''to sell'' in employing the agent. (*Jones* v. *Howard,* 234 Ill. 404 [84 N. E. 1041]; *Armstrong* v. *Lowe,* 76 Cal. 616 [18 Pac. 758]; *Duffy* v. *Hobson,* 40 Cal. 240 [6 Am. Rep. 617]; *Grant* v. *Ede,* 85 Cal. 418 [20 Am. St. Rep. 237, 24 Pac. 890]; *Lambert* v. *Gerner,* 142 Cal. 399 [76 Pac. 53].) **[3]** Applying the settled rule announced by these decisions to the facts in this case, it must at once be concluded that up to the time that the plaintiff signed the contract of sale which was also an escrow agreement, she had not become bound by any act of Elliot or his employees in accepting a deposit on account of the purchase price of her property. Neither did she, by the making of the contract of sale, confirm any such act. She became bound only to the extent and in the manner which that agreement described and as its effect might be limited by the acts of performance then and thereafter made by the vendees. It could not be successfully contended that, upon the signing of the combined contract and escrow agreement, plaintiff would have had the right to demand and receive from Elliot the $1,000 then on deposit. The transaction had not been completed. It was necessary for a deed to be made by the plaintiff and, apparently, that title should be examined before the purchase price was paid. The $1,000 then was held by the escrow-holder for the benefit of, and as the agent of, the purchasers. (On the general subject of the duty of escrow-holders, see 10 R. C. L., p. 636, par. 17.) A prerequisite to the right of the vendees to insist that plaintiff complete the transaction and make a deed in their favor

was that the $1,000 should first be paid to plaintiff or her agent, or be left undisturbed in escrow. The payment of that amount of money or the existence of the deposit was essential to the keeping alive of the agreement to convey. At least, such payment should have been made or tendered within a reasonable time after the execution of the contract. The escrow-holder embezzled the vendees' money and the vendees never replaced the initial payment in the hands of any holder, nor tendered it to the plaintiff. The plaintiff's acts were such as to announce her repudiation of the agreement, and, under all the facts, would seem to have the effect of putting to an end any obligation on her part to convey the property. Under these conclusions the acts of the defendants in taking possession of the property of the plaintiff were the acts of strangers without right and without justification in law.

The judgment is affirmed.

Shaw, J., and Conrey, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on August 1, 1922, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 31, 1922.

All the Justices present concurred.

Richards, J., *pro tem.,* and Myers, J., *pro tem.,* were acting.