[S. F. No. 10667.  In Bank.—October 14, 1925.]

GEORGE W. HICKS et al., Appellants, v. GEORGE OSBORNE WILSON, Respondent.

[1] AGENCY—REAL ESTATE BROKER—SHOWING OF PROPERTY—WILLINGNESS OF PROSPECTS TO PURCHASE — EVIDENCE. — Where a husband and wife, desiring to purchase a home, called upon a real estate broker and asked the latter if he had anything in mind that he thought would suit them, and the broker, pursuant to an appointment made with them, took them to a certain residence, and they, being satisfied after inspection that said residence met their requirements, inquired the price, and the broker immediately, in the presence of the owner of said residence, replied "$6,750.00 cash," whereupon they signified their willingness to purchase at that figure, there is nothing in such facts which tends to establish an employment of the broker by said husband and wife as their agent to procure the property for them.

[2] ID. — CONSUMMATION OF SALE WITH BROKER — STATEMENT OF OWNER—RELIANCE OF BUYERS ON—OSTENSIBLE AGENCY.—Where the husband, immediately following the conclusion to take the property at the price demanded by the broker, asked the owner how he should do business with him, to which question the owner replied: "Do business with Mr. Cokely" (the broker), the husband was warranted in concluding from the reply made by the owner that he could complete the transaction through the broker; and the owner is estopped to deny that the broker had authority to represent him as agent in all steps necessary to be taken in the matter of the consummation of the sale, including the receipt by the broker of a substantial portion of the purchase price; and it is immaterial that the actual authority given to the broker by the owner on the day following the oral agreement to buy the property, and of which the husband was ignorant, did not extend to receiving payment of the purchase price other than a deposit on account thereof.

[3] ID. — AUTHORITY OF REAL ESTATE BROKER — EXTENT OF. — The authority of a real estate broker is only to produce a purchaser who is willing to contract with the seller upon the terms prescribed, and such a broker has no authority to accept money offered by the purchaser to conclude the sale; and when the purchaser pays money into the hands of the broker in such a case the broker holds it as the agent of the purchaser and not of the seller, and any misappropriation thereof is the loss of the former and not the latter.

3.  See 4 Cal. Jur. 566; 25 Cal. Jur. 573; 4 R. C. L. 262.

[4] ID. — OSTENSIBLE AUTHORITY. — A principal is bound not only by the acts which he has actually authorized an agent to perform, but also by those which he has allowed third persons to believe him to be authorized to do.

[5] ID. — AGREEMENT OF BROKER TO PROCURE BALANCE OF PURCHASE PRICE BY MORTGAGE—STATUS AS OWNER'S AGENT UNAFFECTED BY.— The fact that the broker agreed with the husband to procure money by means of a mortgage on the property to pay the balance of the purchase price does not indicate that the broker was acting as the agent of the husband and wife and not of the owner throughout the whole transaction, as such service by the broker is quite distinct from the steps necessary to be taken by the seller and buyers of the property, namely, an investigation into the seller's title, the delivery of the deed, and payment of the purchase price.

[6] ID.—SERVICE OF BROKER IN PROCURING FUNDS FOR BUYERS—COMMON KNOWLEDGE.—It is a matter of common knowledge that real estate brokers make a practice of procuring necessary funds to complete a purchase of property in the sale of which they are interested, and that they receive and are entitled to receive compensation from the buyer for such service; but such service is quite distinct from that rendered to the seller in the sale of his property.

[7] ID.—ACTION TO RECOVER MONEYS PAID TO BROKER—FINDING—EVIDENCE.—In this action to recover moneys paid to a real estate broker on account of the purchase price of a residence, the finding of the trial court that the payment by plaintiffs to said broker was not paid to him as the agent of the owner of said property is not supported by but is contrary to the evidence.

[8] ID.—RATIFICATION—EVIDENCE—APPEAL.—In such action, where the evidence upon the point that the owner was apprised of the fact that the plaintiffs were making payments on account of the purchase price to the broker, and by failing to object thereto ratified that course of dealing, was contradictory, the appellate court is not justified in interfering with the trial court's conclusion in regard thereto.

(1) 9 C. J., p. 516, n. 73.   (2) 9 C. J., p. 671, n. 70.   (3) 9 C. J., p. 671, n. 69.   (4) 2 C. J., p. 567, n. 64; 9 C. J., p. 670, n. 55.   (5) 9 C. J., p. 670, n. 57.   (6) 23 C. J., p. 59, n. 22.   (7) 9 C. J., p. 679, n. 38.   (8) 4 C. J., p. 883, n. 33.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George H. Cabaniss, Judge. Reversed.

4. See 1 Cal. Jur. 737; 21 R. C. L. 854.

The facts are stated in the opinion of the court.

W. F. Sullivan, Edward J. Smith and Albert L. Johnson for Appellants.

Knight, Boland, Hutchinson & Christin for Respondent.

WASTE, J.—Plaintiffs, husband and wife, brought an action to recover $3,000, alleged to be due for money paid to defendant Cokely, a realtor, as agent for defendant Wilson, on account of the purchase of real property, Wilson, the owner of the property, having refused to execute the deed. Wilson offered the sum of $600 to plaintiffs, and on their refusal to accept the tender he placed the money in bank and gave proper notice of the deposit. It was shown at the trial that the plaintiffs paid Cokely $3,000 toward the purchase price of the property without the knowledge of Wilson. Cokely paid Wilson $500 and misappropriated the balance. The trial court found that the plaintiffs employed Cokely to procure for them a residence property, and that in the dealings between plaintiffs and Cokely the latter was acting for and on behalf of plaintiffs as their agent, and not as the agent of defendant Wilson. As a conclusion of law, it, in effect, held that Cokely had no authority to bind the owner, or right to accept money paid by plaintiffs to conclude the sale. It, therefore, entered judgment for plaintiffs for the sum of $500, the amount actually received by Wilson. Because of the tender and deposit, defendant was awarded his costs. Plaintiffs appealed.

The cause was transferred by this court to the district court of appeal, first appellate district, division one, for hearing and determination, where the judgment of the lower court was reversed. In the course of the opinion the court cited the decision of the district court of appeal of the second appellate district, division one, in *Gold* v. *Phelan*, 58 Cal. App. 471 [208 Pac. 1001], as laying down the rule defining the authority of a broker in transactions involving the sale of real estate. In the petition to have the cause heard in the supreme court, after judgment in the district court of appeal, the respondent most earnestly contended that the decision in the case was contrary to

the rule approved in *Gold* v. *Phelan, supra,* and, if allowed to stand, would create great confusion and uncertainty in all real estate transactions where the parties dealt through real estate brokers. The petition was granted, and the cause was brought here in order that this court might finally pass upon the questions presented by the appeal.

After a reargument of the case and a careful considera- tion of all the points involved, we are of the opinion that the facts in the present case differentiate it from those considered in *Gold* v. *Phelan, supra,* and that the opinion of the district court of appeal does no violence to the law of the earlier decision. Neither are we apprehensive that the dire results forecast by the respondent will follow if the present opinion is allowed to stand. We therefore adopt as our opinion the following portion of the opinion of the district court of appeal, written by Mr. Presiding Justice Tyler, and concurred in by Associate Justices St. Sure and Knight:

"It is manifest that the gist of the trial court's find- ings is based upon the theory that in the dealings between plaintiffs and Cokely relative to the purchase of the Wil- son property Cokely was acting for and on behalf of the plaintiffs as their agent and not as the agent of Wilson. It is the plaintiffs' contention in support of their appeal that the findings of the trial court tending to establish this fact are not supported by the evidence. In this we think the appellants are correct.

[1] "The case presents a situation where one of two innocent persons must suffer through the acts of a third person. An examination of the record shows that there is no evidence of any employment by plaintiffs of Cokely to procure for them a residence in Palo Alto. All that the evidence does show in this regard is that the plaintiffs, desiring to purchase a home in that place, called upon Cokely, a real estate broker residing there and having an office in San Francisco, and stated their wants, and asked him if he had anything in mind that he thought would suit them. He immediately made an appointment with them to take them around and show them various properties. Pursuant to this appointment the plaintiffs on November 2, 1920, were taken by Cokely to the residence of defendant Wilson. Being satisfied after inspection that the property

met their requirements they inquired the price. Cokely immediately, in the presence of Wilson, replied '$6,750.00 cash,' and the plaintiffs at once signified their willingness to purchase at that figure. There is nothing in this evidence which tends to establish an employment of Cokely by plaintiffs as their agent to procure property for them. To hold otherwise would be to say that whenever a person desiring to buy real estate enters the office of a realty broker to make inquiry concerning the same, and the broker submits property to him, an agency is created, giving rise to an obligation on the part of such person to compensate their broker for services performed under such employment.

[2] "Other evidence upon the subject of agency shows that immediately following the conclusion of plaintiffs to take the property at the price demanded Mr. Hicks asked Wilson how he should do business with him, to which question Wilson replied: 'Do business with Mr. Cokely.' This is testified to by both Mr. Hicks and his wife and is not denied by Wilson. Thereafter Hicks met Cokely for the purpose of completing the transaction. He informed him that he was only able to pay in cash the sum of $4,000, whereupon Cokely stated that if Hicks would pay to him such amount, he would procure the balance of $2,750 necessary to make up the entire purchase price by means of a mortgage upon the property itself, after which the deed from Wilson would be delivered. Accordingly, Hicks within a few days paid over to Cokely several sums of money amounting in the aggregate to $3,000, only $500 of which were paid over by Cokely to Wilson, Cokely apparently embezzling the remainder. It is upon these undisputed facts that the trial court found that the $3,000 was not paid to Cokely as the agent of Wilson.

"At the time of the meeting between the plaintiffs, Wilson and Cokely on November 2, when the oral agreement for the sale of the property was made, there existed no written contract between Wilson and Cokely, but on the following day Wilson executed a written authorization to Cokely by which the latter was appointed his exclusive agent during a period of ninety days for the sale thereof at the above mentioned price, and by its express terms Cokely was authorized to accept a deposit, the purchaser to be allowed

thirty days to examine title, and Wilson agreed thereunder to pay the sum of $900 as compensation for Cokely's services. It will be observed that at the time when Hicks asked Wilson how he should do business with him and the latter replied, 'Do business with Mr. Cokely,' Cokely had already completed the usual services required of a real estate broker, i. e., he had procured a buyer on terms satisfactory to the seller and who was ready to enter into a binding contract to purchase the property, so that it is evident that the query addressed by Hicks to Wilson could only refer to the steps to be subsequently taken to consummate the sale, and that Hicks was warranted in concluding from the reply made by Wilson that he could complete the transaction through the intermediary of Cokely. Hicks was a retired officer of the United States Army, and prior to this transaction he had never had any dealings in real estate transfers, and he had a right to rely on the statement made to him. And it is immaterial that the actual authority given to Cokely by Wilson on the following day, and of which Hicks was ignorant, did not extend to receiving payment of the purchase price other than a deposit on account thereof. Just what amount of the purchase price might be considered a deposit is a question we are not called upon to consider. [3] It is of course elementary that the authority of a real estate broker is only to produce a purchaser who is willing to contract with the seller upon the terms prescribed, and that such a broker has no authority to accept money offered by the purchaser to conclude the sale; and when the purchaser pays money into the hands of the broker in such a case the broker holds it as the agent of the purchaser and not of the seller, and any misappropriation thereof is the loss of the former and not the latter (*Gold* v. *Phelan,* 58 Cal. App. 471 [208 Pac. 1001]). [4] It is equally well settled, however, that a principal is bound not only by the acts which he has actually authorized as agent to perform, but also by those which he has allowed third persons to believe him to be authorized to do. Ostensible authority is defined by section 2317 of the Civil Code to be 'such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess.' By expressly authorizing the plaintiffs to do business with the agent they were justified in believing that he had authority to receive the price. It is also apparent

from the evidence that Cokely himself in all that he did regarded himself as Wilson's agent and looked to Wilson for his entire compensation. The amount of his compensation provided by the contract was $900, which, it will be observed, is about 15 per cent on the amount of the purchase price—three times the usual commission. Mr. Wilson testified that he protested to Cokely that the commission was excessive, and that the latter in reply stated 'he was doing more than just selling the property. He was arranging for them to raise the cash and that he was giving them the use of his garage for an indefinite period; and he made the point that as the result of the services he was giving to Hicks and the giving of the garage he was entitled to more than the (usual) commission.'

[5] "It is, of course, true that in undertaking to procure the balance of $2,750 by means of a mortgage to be executed upon the property by the purchasers, Cokely contemplated performing a service for the purchasers for which he would have been entitled to be compensated by them; but this service was quite distinct from the steps necessary to be taken by the seller and buyers of the property, namely, an investigation into the seller's title, the delivery of the deed and payment of the purchase price. It is argued by respondent that the fact that Cokely agreed with Hicks to procure this necessary balance in the manner stated indicates that Cokely was acting as the agent of Hicks and not of Wilson throughout the whole transaction; but we think it quite clear that no such inference can be drawn. [6] It is common knowledge that real estate brokers make a practice of procuring necessary funds to complete a purchase of property in the sale of which they are interested, and that they receive and are entitled to receive compensation from the buyer for such service; but, as pointed out above, such service is quite distinct from those rendered to the seller in the sale of his property. It is perfectly apparent that in the other steps in the transaction had subsequent to the agreement of sale that plaintiffs dealt with Cokely as the agent of the owner under the ostensible authority conferred upon him at the time of the making of such agreement.

[7] "We conclude, therefore, that the finding of the trial court that the payment by plaintiffs of the $3,000 to Cokely

was not paid to him as the agent of Wilson is not supported by but is contrary to the evidence.

[8] "There is also abundant evidence in the record that Wilson was apprised of the fact that the plaintiffs were making payments on account of the purchase price to Cokely, and by failing to object thereto ratified that course of dealing; but as the evidence upon this point is somewhat contradictory we are not justified in interfering with the trial court's conclusion in regard thereto. It is sufficient that Wilson, by holding out Cokely as his agent for the consummation of the sale, and by expressly authorizing plaintiffs to do business with him, is estopped to deny that he had authority to represent him as agent in all steps necessary to be taken in that matter, including the receipt of the portion of the purchase price in question. Of course, we do not mean to be understood as holding that authority is apparent in contemplation of law simply because one may conclude it to exist without sufficient facts to warrant such conclusion; but here the direction by the owner himself being in positive terms to do business with the agent, we think the language was broad enough, considering all the facts and circumstances of the case above narrated, to justify the purchaser in concluding that such agent was clothed with full power to complete the transaction in every particular."

For the reasons given, the judgment is reversed.

Richards, J., Lennon, J., Houser, J., *pro tem.*, Seawell, J., Shenk, J., and Lawlor, Acting C. J., concurred.