[Civ. No. 4636. Second Appellate District, Division One.—May 31, 1927.]

ELIZABETH SCHNIER, Respondent, v. J. PHIL PERCIVAL et al., Appellants.

[1] AGENCY—AUTHORITY TO NEGOTIATE SALE—ABSENCE OF AUTHORITY TO COLLECT MONEY ON ACCOUNT OF PURCHASE PRICE—BROKERS. The authority given to a broker to negotiate a sale does not carry with it any express or implied authority to collect as agent for the owner money on account of the purchase price named in the negotiations.

[2] ID. — SALE OF REAL PROPERTY—ACTION BY PURCHASER TO RECOVER PURCHASE PRICE PAID BROKER—DEFAULT OF BROKER—LIABILITY OF PRINCIPAL.—In an action by a purchaser against the owner of real property for payments made to the owner's broker, whom the purchaser believed to be the true owner, where the purchaser did not know the true owner, but supposed that the broker owned the property, recovery of the purchase price from the true owner, after the broker disappeared with the amount so paid, must be as from an undisclosed principal, there being no question of ostensible agency.

[3] ID.—AUTHORITY OF BROKER TO RECEIVE PAYMENTS — EVIDENCE — FINDINGS.—In such action, the evidence was sufficient to support a finding that there was an oral agreement between the owner and the broker authorizing the broker to receive payments.

[4] ID.—AUTHORITY TO COLLECT MONEY—FRAUD OF AGENT—INNOCENT THIRD PERSONS — LIABILITY OF UNDISCLOSED PRINCIPAL. — Where an undisclosed principal permits his agent to hold himself out as the real principal and thereby defraud others by the collection of money, the undisclosed principal will not be permitted to deny the existence of an agreement authorizing such collection as against innocent third persons.

[5] ID. — KNOWLEDGE OF PRINCIPAL — RATIFICATION.—Knowledge by a land owner that his agent was collecting payments from purchasers, and demand of accounting therefor, ratified acts of the

---

1. Authority of broker to receive payment for commodities which he is authorized to sell or for which he is to find a market, note, 8 A. L. R. 210. See, also, 4 R. C. L. 258, 259. Agent's authority as to accepting payment, note, 19 L. R. A. (N. S.) 324. See, also, 1 Cal. Jur. 720; 21 R. C. L. 867.

2. See 21 R. C. L. 900.

4. See 1 Cal. Jur. 857; 21 R. C. L. 893.

agent in collecting such payments and made the owner liable as an undisclosed principal.

[6] ID. — SALE OF REAL ESTATE — WRITTEN AUTHORITY. — Authority given to an agent to sell real estate is not required by law to be in writing.

[7] ID. — CREATION OF AGENCY — RATIFICATION OF AGENT'S ACTS — ACCEPTING AND RETAINING BENEFITS. — Under section 2307 of the Civil Code, an agency to sell real estate may be created by a precedent authorization or by subsequent ratification, but subsequent ratification can be made only in the manner that would be necessary to confer original authority, or, where oral authority would suffice, by accepting or retaining the benefit of the act, with notice thereof, under section 2310 of the Civil Code.

[8] BROKERS — AUTHORITY TO SELL REAL PROPERTY—AGENCY—ACTS OF AGENT—INFERENCES—EVIDENCE.—In determining whether a broker, authorized to sell real property, had authority to accept payments, his acts, which were of such nature and so continuous as to justify a reasonable inference that the principal knew of them and would not have permitted them if unauthorized, are competent evidence of agency.

[9] AGENCY—ACTS OF AGENT—UNDISCLOSED PRINCIPAL.—The contract of an agent, who deals in his own name without disclosing that of his principal, is the contract of the principal.

[10] BROKERS — PAYMENTS MADE BY PURCHASER OF REAL PROPERTY — AUTHORITY OF AGENT TO RECEIVE PAYMENTS — KNOWLEDGE OF PRINCIPAL — DEFAULT OF AGENT — EVIDENCE. — In an action by a purchaser of real property to recover from the owners payments made to their agent, who subsequently disappeared with part of the purchase price, plaintiff was not required to prove specific knowledge of defendants as to particular payments, where there was proof of defendants' general consent and approval of the agent's receipt of payments from purchasers.

[11] ID.—AUTHORITY TO COLLECT MONEY—FINDINGS.—In such action, a finding that money was paid to the absconding broker "as the agent of the said defendants as aforesaid, with the consent and approval of said defendants," was sufficient, when considered with the findings as a whole, to constitute a finding that the broker was authorized to collect money in the capacity of agent for defendants.

[12] ID. — CONTRACT WITH BROKER — EVIDENCE. — In such action, defendants were bound by the statements and conduct of a joint

6.   See 1 Cal. Jur. 728; 4 R. C. L. 249.
7.   See 1 Cal. Jur. 770, 773.
8.   See 1 Cal. Jur. 771, 778; 21 R. C. L. 924.
9.   See 1 Cal. Jur. 856; 21 R. C. L. 890.

owner, who actively conducted business between defendants and the broker, although the title to the property stood in the name of other defendants as trustees and the contract binding the broker as selling agent was signed by such defendants as trustees.

---

(1) 9 C. J., p. 671, n. 69.    (2) 9 C. J., p. 668, n. 43.    (3) 9 C. J., p. 679, n. 38.    (4) 2 C. J., p. 840, n. 70.    (5) 9 C. J., p. 533, n. 98. (6) 2 C. J., p. 449, n. 85.    (7) 2 C. J., p. 502, n. 18.    (8) 9 C. J., p. 651, n. 24.    (11) 9 C. J., p. 663, n. 81.    (12) 22 C. J., p. 367, n. 99.

APPEAL from a judgment of the Superior Court of Los Angeles County. M. S. Sayre, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Stephens & Stephens, Chandler P. Ward and Carroll Searls for Appellants.

W. I. Gilbert, Milton Bryan and Burton Briggs Crane for Respondent.

McLUCAS, J., *pro tem.*—Plaintiff brought suit to recover the purchase price paid by plaintiff to H. B. Eshleman, doing business under the style and firm name of H. B. Eshleman Realty Company, for certain real property which was owned by defendants and which was being sold by Eshleman as the agent of defendants. Judgment was rendered for plaintiff, and defendants appeal therefrom.

Appellants were joint owners of certain real estate, the title being in the name of appellants J. Phil Percival and Eugene P. Fallis, as trustees for all of the owners. According to the testimony of respondent's witness Raven, appellant Roberts, as part owner and agent of the other owners, approached the Eshleman Realty Company on the subject of taking over as agents and selling various lots in the tract of real estate. Subsequently J. Phil Percival and Eugene P. Fallis, as trustees, entered into a contract with H. B. Eshleman Realty Company for the sale of the lots described therein; the contract being as follows:

"Mr. J. Phil Percival and E. P. Fallis, trustees of that certain real property hereinafter described, and having full and due authority, do hereby make, constitute, appoint and employ the H. B. Eshleman Realty Company of 345 South

Hill street in the city of Los Angeles, county of Los Angeles, state of California, for a period of six months from the date hereof, as sole and exclusive agents for the sale of the unsold lots situate, lying and being in that certain tract of land lying and being in the county of Los Angeles, state of California, designated and known as Tract No. six hundred thirty-five (635), sheet No. two (2), according to the official map and plat of said tract of record in the office of the county recorder of said county of Los Angeles.

"The schedule of prices for which said lots shall be sold are as follows, to-wit: (Here follow lot numbers and prices.)

"The terms of the sale of said lots shall be as follows, to-wit: 25% of the total sales price to be in cash. The balance of the purchase price of each of said lot or lots to be evidenced by a promissory note payable in six equal semi-annual payments, with interest upon all unpaid balances at the rate of seven per cent (7%) per annum payable quarterly. Such promissory note to be secured by a trust deed upon the lot or lots so sold,

"As commission and as compensation for services to be performed by the said H. B. Eshleman Realty Company in effecting the sale of said lots, they shall be allowed a commission of 25% of the total sale price of each lot, to be paid in the manner following:

"Seventy per cent (70%) of each payment made on account of the purchase price of said lots as the same is made in cash until the full amount of said commission shall have been paid.

"Purchasers of any of said lots shall be allowed a five per cent (5%) discount from the total sales price if paid in cash, the H. B. Eshleman Realty Company thereupon to be entitled to their full commission.

                    "PERCIVAL-FALLIS SYNDICATE,
                "By J. PHIL PERCIVAL, Trustee.
                "By EUGENE P. FALLIS, Trustee.
        "H. B. ESHLEMAN REALTY COMPANY,
                    "By H. B. ESHLEMAN, Pres."

Thereupon Eshleman entered into the performance of the contract. A sales campaign was put on. Respondent, with others, was conveyed to the tract in a bus of the Eshleman Company. Respondent agreed to purchase one of these lots, and as first payment delivered to J. J. Wright, Eshle-

man's employee, a check for $362.50, payable to H. B. Eshleman Realty Company, and received therefor a receipt signed "H. B. Eshleman Realty Co., by J. J. Wright." Respondent was assured by Wright that she would be given a cash discount of five per cent for cash payment on the lot, and thereafter issued her checks for the balance due on the purchase price, payable to H. B. Eshleman Realty Company, and was given a receipt therefor as follows:

"No. ——            Los Angeles, Cal. Feb. 9/21.

"Received of Elizabeth Schnier checks for one thousand and fifteen and no/100 dollars, Bal. in full on lot 16, block P, tract 635, checks for $700—Fifth-Third Natl. Bank of Cincinnati. 315.00 Secy. Tr. and Savings Bank, L. A. $1015.

"H. B. ESHLEMAN REALTY CO.,

"By F. J. RAVEN."

Eshleman disappeared and none of the money was received by appellants. Plaintiff thought that Eshleman owned the property, and did not know defendants in any connection until after Eshleman had disappeared.

Appellants' first point is that the contract, in legal effect, gave Eshleman only the power to negotiate a sale and no power to enter into a contract of sale binding on the defendants. As that is not the question at issue, appellants' authorities in support of this contention are beside the point. The issue in this case is whether Eshleman had authority to accept payments of money on the contract so as to permit recovery of such payments from the defendants, although Eshleman did not turn the money over to the defendants.

[1] Appellants' second point is that "an owner of real property, who has employed a broker to negotiate a sale, is not answerable as principal to a third party, who has deposited with the broker a part, or the whole, of the purchase price. In other words, authority to negotiate a sale does not carry with it any express or implied authority to collect as agent for the owner money on account of the purchase price named in the negotiations." The rule of law as thus stated is conceded by respondent to be correct and is well settled. (*Hicks* v. *Wilson*, 197 Cal. 269 [240 Pac. 289]; *Gold* v. *Phelan*, 58 Cal. App. 472 [208 Pac. 1001].) It is held in these cases that the authority of a real estate broker is only

to produce a purchaser who is willing to contract with the seller upon terms described; that such a broker has no authority to accept money from the purchaser and to conclude the sale, and that when the purchaser pays money into the hands of a broker, in such a case the broker holds it as the agent of the purchaser and not of the seller, and any misappropriation thereof is the loss of the former and not of the latter. This rule, however, was not applied in the case of *Hicks* v. *Wilson, supra,* for the reason that under the facts of the case there was held to be an ostensible agency. Each of the foregoing cases was a separate transaction in which the buyer knew he was dealing with the agent for the sale of the owner's property, and therefore the buyers were put upon inquiry to ascertain the selling agent's power to receive payments of money. In the case at bar the plaintiff did not know the owner of the property and supposed the Eshleman Company to be the owner; there being nothing in the language of the receipts issued by the Eshleman Company to indicate they were acting as agents for others. In the case at bar there were many transactions and it is not to be presumed that no similar payments were made in plaintiff's presence. As will appear from the evidence, these payments were received by the Eshleman Company with the knowledge and consent of the owner, and further knowledge that the receipts therefor were being issued in the name of the Eshleman Company. [2] The question of ostensible agency does not enter into the decision of the instant case for the reason that the plaintiff had no communication with the defendants and did not know of their existence during the entire transaction. Neither did plaintiff deal with Eshleman as an ordinary agent, but rather as a principal, she having paid the purchase money to Eshleman as the owner of the land and believing him to be such owner.

If there is any liability on the part of appellants for payments made by respondent to the agents, it is that of an undisclosed principal. As we have observed, no such liability could arise on a written contract authorizing the agent to sell the real estate. Respondent urges that this liability arises out of a separate oral contract, as pleaded and proved by the plaintiff. The complaint alleges: ''That subsequent to the execution of the said agreement on the

part of the said defendants and the said H. B. Eshleman
Realty Company, as aforesaid, and in negotiating the sale of
said real property described in said agreement, the said
H. B. Eshleman Realty Company and the said H. B. Eshle-
man and each of them, received of and from the prospective
purchasers of said real property, partial and full payments
of the purchase prices of the respective lots sold to the re-
spective purchasers thereof, and thereupon issued to said
prospective purchasers, for the said payments upon the pur-
chase price of said lots, receipts for the payment of said
moneys. Plaintiff further alleges that the moneys paid to
and received by said H. B. Eshleman Company and H. B.
Eshleman by the respective purchasers of the lots described
in said agreement were paid to and received by H. B. Eshle-
man Company to and for the use and benefit of said de-
fendants and each and all of them. . . . That it was there-
after agreed and understood by and between said defendants
and the said H. B. Eshleman Company, that the said H. B.
Eshleman Company and said H. B. Eshleman should have
the right to receive and collect and issue receipts for any and
all moneys paid by prospective purchasers as partial or
whole payments upon the purchase price of said property
described in said agreement; and that in accordance with
that understanding, the said H. B. Eshleman Company and
H. B. Eshleman did receive and take and issue receipts for
partial and whole payments of purchase prices paid by
various purchasers for said lots described in said agree-
ment.'' Respondent urges that the testimony of appellant
Roberts is sufficient to support the findings of the court
in accordance with the above allegations. Roberts, when
questioned by the court, testified as follows: ''Q. You ex-
pected them to receive money if they made a sale? A.
Why, they were naturally acting as the agent to dispose of
the property. Q. And as such were entitled to receive the
first payment? A. Naturally. . . . Q. But they were au-
thorized to receive the full amount from the purchaser and
from that take their 25%? A. Yes, they would have been en-
titled to do it.'' Roberts further testified that he knew Eshle-
man was receiving payments on the lots, and that when the
Eshleman Company received the twenty-five per cent pay-
ment they were supposed to place it in escrow in their de-
partment, and then call upon the owners for a contract or a

deed in case the money was all paid. Dr. F. J. Raven, sales manager of the Eshleman Company, as a witness for plaintiff, testified that Roberts came into his office frequently during the sales campaign; that he advised Roberts that lots were being sold and that the Eshleman Company was taking in money on the sales, and that from and after the execution of the written contract it was the custom of the Eshleman Company to receive the money. J. J. Wright, sales manager of the Eshleman Company, testified that appellants Roberts and Fallis were at the office of the Eshleman Company while he was engaged in selling appellants' land; that Roberts was at the tract nearly every day, and that the witness had a conversation with Roberts at the office respecting the sale of the property nearly every day; that Roberts would ask how many sales were made that day and "approximately how much cash"; and that he would tell Roberts that on the ground where the property was being sold. The witness further testified: "Mr. Roberts had a conversation with me on one occasion either in the latter part of January or the beginning of February, 1921, and the question came up as to the statement that Mr. Roberts had been trying to get from the Eshleman Company all moneys that had been received on properties sold. He said something to me about it, and I said: 'Well, why don't you demand it?' 'Well,' he said, 'I have been after him for a week or two to give me a statement, and I have not been able to get it out of him.' And he says: 'How much money have you received?' I says: 'I don't know, but you see I am getting it every day, and you know that we are selling lots, and it is up to you to demand it and get your statement.' I know that Mr. Roberts saw a form of the receipt issued by H. B. Eshleman Company, and in the same form as Exhibit No. 1. We had half a dozen receipt books on the tract at all times, and I showed him receipts two or three times. At the time I had this conversation with Mr. Roberts in respect to the manner in which I was selling lots and accepting money, Mr. Roberts never made any objection to me about accepting money. He knew it was a general rule to do it." The witness also testified that Roberts was present in the office on the tract when some of the receipts were issued, but made no objection. Appellants Roberts, Percival, and Fallis testified that there was no con-

tract between the owners and the Eshleman Company besides the written contract herein mentioned.

[3] It thus appears that the evidence offered by plaintiff tends directly to the conclusion that a separate oral agreement existed whereby the Eshleman Company was authorized to receive payments. Where other payments were received with the knowledge and consent and without the objection of the defendants, defendants cannot be permitted to deny that the payment in the case at bar was made with their consent and to deny the existence of a separate oral agreement. [4] Where an undisclosed principal permits his agent to hold himself out as the real principal and thereby defraud others by the collection of money, the undisclosed principal will not be permitted to deny the existence of an agreement authorizing such collections in his behalf as against innocent third persons. [5] Defendants knowing that Eshleman was collecting payments and demanding an accounting therefor, ratified the acts of Eshleman in collecting such payments, and were liable as undisclosed principals. [6] Authority to collect money is not required by law to be in writing. [7] An agency may be created by a precedent authorization or by a subsequent ratification. (Sec. 2307, Civ. Code.) Subsequent ratification can be made only in the manner that would be necessary to confer original authority, or where an oral authorization would suffice, by accepting or retaining the benefit of the act, with notice thereof. (Sec. 2310, Civ. Code.) [8] In the case at bar the evidence tends to show that defendants accepted and retained the benefit of Eshleman's act in collecting the money by demanding an accounting for all moneys so collected. It appears from the evidence in the case that defendants knew the general custom of Eshleman to collect payments and issue receipts in his own name and, by failure to object, acquiesced in this conduct. Where the acts are of such a nature and so continuous as to justify a reasonable inference that the principal knew of them and would not have permitted them if unauthorized, the acts are competent evidence of agency to be submitted to the court or jury. (*Reynolds* v. *Collins*, 78 Ala. 94.) The fact that the principal with knowledge recognizes and acquiesces in the performance of the authority in a certain manner or to a certain extent is ordinarily competent evidence that execution

in that manner or to that extent was authorized. Usually, of course, no inference of recognition or acquiescence can be drawn unless it appears that the alleged principal had knowledge of what had thus been assumed in his name or on his account; but this knowledge need not be expressly shown. The act done may have been so public or notorious, or so closely related to the alleged principal, that he could not be heard to say that he was ignorant of it. (Mechem on Agency, secs. 265, 266.) The facts, moreover, may be so patent that for the principal to profess ignorance would be merely to stultify himself. They must be so obvious that the principal as a reasonable man cannot be heard to say that he was ignorant of them. (Mechem on Agency, sec. 405; *Ballard* v. *Nye,* 138 Cal. 588 [72 Pac. 156].) [9] The rule is well established that the contract of an agent who deals in his own name without disclosing that of his principal is the contract of the principal. (1 Cal. Jur., p. 856, sec. 133; *Geary St. etc. R. R. Co.* v. *Rolph,* 189 Cal. 59, 64 [207 Pac. 539], and cases cited; *Central Savings Bank* v. *Coulter,* 72 Cal. App. 78, 87 [236 Pac. 956].) We conclude that under the circumstances in this case the evidence is sufficient to require us not to disturb on appeal the finding of the trial court that at the time the moneys were paid by plaintiff to the Eshleman Company it was agreed and understood by and between defendants and the Eshleman Company that Eshleman Company did have the right to receive and collect and issue receipts for moneys paid by prospective purchasers as partial or whole payments upon the purchase price of property, and that said moneys were paid to the Eshleman Company for the use and benefit of defendants.

[10] Appellants' third and fourth points have been already disposed of in our decision that there was sufficient evidence to support the finding of the trial court that there was an actual contract authorizing the Eshleman Company to collect money, and the defendants were liable as undisclosed principals, although the plaintiff dealt with Eshleman in his own name and did not know the defendants were the owners. The agency was actual and not ostensible, and the evidence was sufficient to support the finding that Eshleman Realty Company accepted all payments, including that of the plaintiff, with the consent and approval of the defendants. Where there was proof of such general consent and

approval, plaintiff was not required to prove specific knowledge of defendants as to the particular payments made to Eshleman by plaintiff.

[11] By point five appellants contend that there was no finding or allegation that Eshleman was authorized to collect the money in the capacity of agent for the defendants. Finding X states that the money was paid to Eshleman "as the agent of the said defendants as aforesaid, with the consent and approval of said defendants." We think this finding, taken together with the findings as a whole, is sufficient to meet the objection of the appellants, and that the finding is supported by the allegations of the complaint.

Finally, appellants urge that the court erred in various rulings in the admission of evidence; such evidence being the checks made payable to Eshleman and the receipts signed by Eshleman. As these objections are based upon the contention that the relation of principal and agent between Eshleman and defendants has not been established, we will not engage in further discussion of the point raised on the objections.

[12] Appellants' contention that the other defendants should not be bound by the statements and conduct of Roberts is not well founded. Roberts was a joint owner with the other defendants and actively conducted the business between defendants and Eshleman, although the title to the property stood in the name of Percival and trustees, and the contract binding Eshleman as selling agent was signed by them as trustees.

For the reasons stated, it is ordered that the judgment be affirmed.

Conrey, P. J., and York, J., concurred.