[Civ. No. 3758. Third Appellate District.—May 28, 1929.]

MERCANTILE INVESTMENT COMPANY (a Corporation), Appellant, v. T. J. V. HOW et al., Respondents.

Paul Barksdale D'Orr and A. L. Abrahams for Appellant.

Keeler, Fickert & French for Respondents.

PRESTON (H. L.), J., *pro tem.*—Plaintiff and appellant Mercantile Investment Company, a corporation, brought this action to quiet title to a tract of land situate in the town of "Hollydale," Los Angeles County. An answer was filed by the defendants and respondents T. J. V. How and Mary E. How, his wife, in which they alleged that they had an interest in said real property consisting of a lien thereon for the sum of $1163.60, which sum they had paid to appellant on account of the purchase price of said property. The answer further alleged that the contract theretofore entered into between respondents and appellant had been rescinded by respondents on the ground of fraud.

Respondents also filed a cross-complaint in which they alleged that on March 5, 1924, appellant, through its agents, H. H. Townsend & Company, made a contract in writing with respondents to sell, and respondents had agreed to purchase, the real property in question for $6,500; that prior to the making of said contract, appellant, through its said agents, made certain false and fraudulent representations to them for the purpose of inducing them to purchase said property, and said false representations did induce them to enter into the contract of purchase.

It was also alleged in the cross-complaint that various payments, amounting to $1163.60, were made to appellant by respondents on account of the purchase of said property before the true facts were discovered.

Appellant filed an answer to said cross-complaint, specifically denying all of the allegations thereof.

The case was tried by the court without a jury and the court found that appellant was the owner of the real estate in question, but that respondents were entitled to a lien thereon for the amount of money they had paid, less the reasonable rental value of the property while respondents occupied it; or, a lien for the sum of $469.37, and judgment was entered accordingly.

From this judgment Mercantile Investment Company prosecutes this appeal.

At the trial it was conceded that appellant was the owner of the real property in question, and the case was tried upon the issues made by the cross-complaint and the answer thereto.

The court found, among other things, that appellant, through its agents H. H. Townsend & Company, with intent to deceive and defraud respondents, and to induce them to enter into said contract of purchase, did falsely represent and state to respondents that the Keiner Cotton Manufacturing Company owned 20,000 square feet of land in "Hollydale" and would immediately commence the construction and erection of a large factory for the manufacture of cotton goods; that in truth and in fact, said Keiner Cotton Manufacturing Company did not own 20,000 square feet of land or any land in Hollydale, and were not going to immediately, or at all, commence the construction and erection of a large or any factory for the manufacture of cotton goods or at all; that said statements and representations were false and said appellant knew at the time said statements were made that the same were false; that appellant, also through its agents, at the same time and for the same purpose, falsely represented and stated that plans were being perfected for the erection by Lundius-Eccleston Motors Corporation, in Hollydale, of its first unit of a plant to cost $2,000,000, and to cover ten acres, and which was to be used for the purpose of manufacturing automobiles by said company, and that said motor corporation was bringing its mechanics and workmen from the east and would immediately construct 100 houses to be used as homes for said mechanics and working men. The court found that these statements were absolutely false and known to be false by appellant and made for the purpose of inducing respondents to purchase said property.

Many other similar false statements and representations were found by the court to have been made by appellant through its agents for the purpose of inducing respondents to enter into said contract of purchase.

It is conceded that said statements and representations were made by H. H. Townsend & Company to respondents, and that they were all false and known to Townsend & Company, when made, to be false. It is also apparently conceded by appellant that the price agreed to be paid by respond-

ents for the property in question was far in excess of its real value.

Appellant contends "there is no evidence whatever that H. H. Townsend & Company was either the actual or ostensible agent of appellant." This is the sole contention made on this appeal.

When the findings are attacked for insufficiency of the evidence to support them, our power begins and ends with an inquiry whether there is substantial evidence, contradicted or uncontradicted, which in and of itself will support the findings of the trial court. If on any material point the testimony is in conflict, we must assume that the trial court resolved the conflict in favor of the prevailing party. (*Treadwell* v. *Nickel,* 194 Cal. 243 [228 Pac. 25]; *Gjurich* v. *Fieg,* 164 Cal. 429 [Ann. Cas. 1916B, 111, 129 Pac. 464].)

Therefore, we will simply epitomize only enough of the record to show whether or not the findings and judgment of the trial court have substantial support in the evidence.

Appellant was the owner of a tract of land in Los Angeles County called "Hollydale," which included the land in question. H. H. Townsend, doing business as "H. H. Townsend & Company," had charge of the disposal of the lots in the tract under a written contract which provided in part as follows: "Townsend agrees to keep in a manner prescribed by the company (appellant) a complete set of books and records truly and correctly portraying each and every transaction had by him in connection with the improving, sub-dividing and *sale of said property,* and to permit the company, at its own expense, to keep in his office a representative who shall at all times have access to said records and books and who shall receive for the company all moneys, checks, notes, contracts and other things of value which may come into the office of said Townsend & Company by, through or in connection with the sale of the property or any part or parcel thereof; it being understood and agreed that all moneys received are and shall be the sole and exclusive property of the company . . . The company (appellant) agrees that out of the moneys received by it, whether the same be first or deferred payments, fifty per cent shall be set aside for and paid to Townsend; settlements to be made on Tuesday of each week for all moneys received during the previous week . . . "

This contract was offered in evidence in the trial court and marked Plaintiff's Exhibit No. 1, but for some reason no copy of it is found anywhere in the record on appeal. We are therefore, unable to determine its full terms; the above-quoted portions thereof were taken from respondents' brief. Appellant makes no mention or reference to this contract.

The method adopted by H. H. Townsend & Company in selling these lots included signs posted on the premises with various and alluring inscriptions, which were calculated to attract the unwary; for example, "Hollydale Home and Industrial City—the Baby City—Watch me Grow. H. H. Townsend & Co."

There were also signs showing factories coming to "Hollydale," listed as "L. & E. Motor Company," "Keiner Cotton Manufacturing Company," "University Specialty Manufacturing Company," "Aunt Betty Produce Company," and others. The name of H. H. Townsend & Company appeared on all these signs; the name of appellant, Mercantile Investment Company, the owner, did not appear on any of the signs.

Respondents, driving by the tract on or about March 2, 1924, and seeing the signs and improvements on the land, visited the "auditorium," situated on the tract, upon which was the sign "Hollydale. H. H. Townsend & Co." There they met a salesman named Lindsley, who invited them to remain for lunch and listen to a lecture on the desirability of purchasing lots in "Hollydale." This, respondents did; then Lindsley showed them over the tract and the next evening visited respondents at their home. A day or two later Lindsley conducted respondents to the office of H. H. Townsend & Company in Los Angeles. There H. H. Townsend informed them that he was the agent of appellant and that he and appellant were really partners. Respondents agreed to purchase the property in question for $6,500, and paid to Townsend a deposit of $250, subject to a satisfactory contract being prepared, a receipt being given to them for said sum, which receipt was signed by H. H. Townsend & Co.

Subsequently a sale and purchase contract was prepared in the name of H. H. Townsend & Company, as sellers, and respondents, as purchasers, and respondents were at that

time told that the reason for making the contract in the name of H. H. Townsend & Co., and not appellant, was that H. H. Townsend & Company was the agent for appellant and that when the contract was fulfilled a deed would be issued to respondents by appellant. The total cash payment called for by the contract was $1,000, which respondents paid. The balance was to be paid at the rate of $50 per month, with interest at seven per cent per annum. Respondents paid various installments under said contract, amounting to a total sum of $1163.60 paid on account of the purchase price of said property.

On April 5, 1924, respondents sent a check made payable to H. H. Townsend & Company for $82.09. This check was cashed and contains the following indorsements on the back thereof: "H. H. Townsend & Company, Angus Davis," and below that "Pay to the Order of the Long Beach Branch, Security Trust & Savings Bank, Long Beach, California, Mercantile Investment Company."

On or about May 5, 1924, respondents made another check for $81.80, payable to H. H. Townsend & Company, but before it was delivered, W. O. Campbell, who was the field manager for appellant, called upon respondents and requested that they give the check to him, which was done, and a receipt was issued by Campbell as follows:

"Long Beach, Calif., May. 5, '24.

"Received of T. J. V. How check $81.80 as payment on Lot 31—Blk 50—Hollydale. Payable to H. H. Townsend & Co.

"MERCANTILE INV. Co.

"By W. O. CAMPBELL."

Thereafter, and on June 5, 1924, respondents received the following letter, to wit:

"Los Angeles, Calif., June 5—24.

"Mr. & Mrs. T. J. V. How,

"R. R. 1—Box 663,

"Hynes, Calif.

"I am returning herewith your check of $81.51 as payment and interest on your property at Hollydale, asking you to hold same until notified otherwise.

"Yours truly,

"MERCANTILE INV. Co.

"By W. O. CAMPBELL."

H. H. Townsend disappeared, and after the receipt of this communication from appellant, no further payments were made by respondents.

Mr. E. A. Parkford, the president of the appellant corporation, was called as a witness for respondents and testified that during the greater period of the subdivision exploitations of Hollydale, he was looking after its affairs as executive officer, and between 1923 and 1924 he was on the tract once or twice a week at times and away for three or four or five months at a time, and during the occasion of his visits to Hollydale during the latter part of 1923 and the first five or six months of 1924, he saw the signs of H. H. Townsend & Company on the property; that he knew the method used by Townsend in advertising and selling the property; and that his company was the owner of the property in question and that he was familiar with the terms of the contract between appellant and Townsend.

The court also found that appellant received all of the $1163.60 paid to H. H. Townsend & Company by respondents. Appellant does not question this finding.

█ From all these facts and circumstances it is difficult to perceive how the trial court could have reached any other conclusion than that H. H. Townsend & Company were the agents of appellant, clothed with authority not only to negotiate the sale of lots in "Hollydale," but also to accept money from the purchasers and conclude the sales.

█ We are not unmindful of the well-settled rule of law that a real estate broker's authority to negotiate a sale does not carry with it any express or implied authority to collect as agent for the owner money on account of purchase price, and the owner is not answerable to a third party who has deposited with the broker part or the whole of the purchase price. (*Hicks* v. *Wilson*, 197 Cal. 269 [240 Pac. 289]; *Gold* v. *Phelan*, 58 Cal. App. 472 [208 Pac. 1001]; *Schnier* v. *Percival*, 83 Cal. App. 470 [256 Pac. 1109].)

█ In the instant case, however, the contract between appellant and H. H. Townsend & Company goes further than merely appointing H. H. Townsend & Company as brokers to negotiate the sale of lots in "Hollydale"; said contract directs H. H. Townsend & Company to keep a complete set of books and records truly and correctly portraying each and every transaction had in connection with

the improvement, subdividing or sale of said property, and to permit appellant to keep in Townsend's office a representative who shall at all times have access to said records and books, and who shall receive for appellant all moneys, checks, notes, contracts and other things of value which may come into the office of said Townsend, by, through, or in connection with the sale of said property or any part thereof. Said contract further provided, "It being understood and agreed that all moneys received are and shall be the sole and exclusive property of the company (appellant) . . ."

Appellant certainly by this contract contemplated and expected that H. H. Townsend & Company would not only negotiate sales of lots in "Hollydale," but that H. H. Townsend & Company would also collect money from purchasers and conclude sales for and in behalf of appellant. Otherwise, there would have been no necessity for the provisions in the contract that appellant's representative be on hand to take charge of the money and keep a check on Townsend's operations.

Irrespective of the terms of the written contract between appellant and H. H. Townsend & Company, it seems inconceivable, under all the facts and circumstances appearing in evidence, that appellant would be entirely ignorant of negotiations, sales, contracts and collections made by Townsend & Company. Appellant owned the tract of land, placed Townsend & Company in charge of the subdividing, improvement and sale thereof; placed their own representative in Townsend's office to look after their interest. Townsend placed his signs all over the property. The president of appellant corporation visited the land on numerous occasions and saw signs on the property and knew that Townsend was making sales and receiving payments, and knew the method used by Townsend in making sales, such as having lectures made in the "auditorium" on the land, etc.

The operations of Townsend & Company were so closely related to appellant, and were so public and notorious, that the officers of appellant, as responsible men, cannot be heard to say that they were ignorant of them. (Mechem on Agency, secs. 265, 266, 405; *Ballard* v. *Nye*, 138 Cal. 588 [72 Pac. 156]; *Schnier* v. *Percival, supra.*) No doubt exists under the evidence, that H. H. Townsend & Company had original authority from appellant to make the contract with

respondents. Furthermore, if any doubt existed under the evidence, as to the original authority of H. H. Townsend & Company to make the contract with respondents and receive the money from them, appellant has ratified the contract and acts of H. H. Townsend & Company by receiving and retaining the money paid by respondents.

It follows from what has been said that we are of the opinion that the finding that H. H. Townsend & Company were the agents of appellant in the transaction with respondents finds substantial support in the evidence, and that the judgment should be affirmed and it is so ordered.

Plummer, J., and Finch, P. J., concurred.