[S. F. No. 14397. In Bank.—May 29, 1933.]

JULIUS ERNST et al., Respondents, v. C. R. SEARLE et al., Defendants; HILBAR PROPERTIES COMPANY (a Corporation), Appellant.

Stoney, Rouleau, Stoney & Palmer and Royal E. Handlos for Appellant.

Brobeck, Phleger & Harrison, Maurice E. Harrison and S. R. Pfund for Respondents.

Tobin & Tobin, as *Amici Curiae*.

THE COURT.—A rehearing was granted in this case in order to give further consideration to certain contentions made by appellant and by several *amici curiae* on its behalf. Upon such reconsideration we are of the opinion that the decision heretofore rendered properly disposes of the issues raised on this appeal. We therefore adopt as part of the opinion of this court the following portions of the opinion heretofore rendered:

"This is an action to quiet title. Plaintiffs, husband and wife, reside in Los Angeles. The property involved therein is located in San Francisco. In February, 1929, defendant Searle, a real estate agent in Los Angeles, suggested to them that they exchange their San Francisco property for certain property in Los Angeles. Plaintiffs agreed, and on February 28, 1929, they executed a writing authorizing Searle to negotiate the exchange. Searle went to San Francisco, talked with A. J. Conway, another real estate broker, and thereafter interested defendant Hilbar Properties Company in the purchase of plaintiffs' property. An agreement of sale was drawn up on March 1, 1929, by the terms of which said defendant was to assume a $10,000 mortgage on the property and pay the sum of $5,500 in cash. An escrow was opened with defendant Title Insurance and Guaranty Company in San Francisco. Searle then returned to Los Angeles, and fraudulently represented to plaintiffs that Hilbar Properties Company was the owner of the Los Angeles property which they wanted to obtain; that he had arranged the exchange; and that it was necessary that he have a deed to complete the transaction. A deed executed by Mrs. Ernst to A. J. Conway as grantee was first given to him, and rejected by the Title Company because of the absence of the husband's signature. Thereupon, on March 5, 1929, plaintiffs executed a deed to Hilbar Properties Company, which Searle took to San Francisco and deposited with the Title Company. The deed was recorded, the purchase price was paid into escrow, and, pursuant to instructions from Searle,

the Title Company paid the commissions and on March 9th sent him the balance of the money, $3,727.07, in the form of a certified check made out to him as payee. Searle cashed the check and disappeared. Mrs. Ernst expected to hear from him about April 8th, and upon his failure to call she investigated the .ownership of the Los Angeles property and discovered that the defendant Hilbar Properties Company had no interest therein and that the authorized exchange had not been carried out. Shortly thereafter, on April 24, 1929, this action was commenced to quiet title to the San Francisco property. Judgment was rendered in favor of plaintiffs, and defendant Hilbar Properties Company appealed.

"The evidence showed and the trial court found that neither plaintiffs nor said defendant made any investigation of the circumstances surrounding the transaction, prior to its completion. The court further found, and the finding is fully supported by the evidence, that 'the plaintiffs Anna Ernst and Julius Ernst never intended, nor did either of them ever intend, that the said document be delivered or that the same should be effective as a deed, unless and until the exchange of properties . . . should be consummated'. The decision was based upon the conclusion that the deed executed by plaintiffs was never validly delivered to the grantee. With this conclusion we agree.

"The question, of course, is whether Searle had authority, as agent for plaintiffs, to deliver the deed. Such authority must have been either actual or ostensible. He had no actual authority, since he was instructed to effect an exchange and not a sale of the property, and his authority to deliver the deed was subject to this condition. The evidence shows that plaintiffs did not intend the instrument to be delivered except as part of the exchange.

"It is just as clear that Searle had no ostensible authority to deliver the deed. 'Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess.' (Cal. Civ. Code, sec. 2317.) An agent also has such authority as is given by statute (Cal. Civ. Code, secs. 2304 et seq.) unless deprived thereof by his principal; 'and has even then such authority ostensibly, except as to persons who have actual or constructive notice of the restriction upon

his authority'. (Cal. Civ. Code, sec. 2318.) Ostensible authority rests upon the doctrine of estoppel, and its essential elements are representation by the principal, justifiable reliance thereon by the third party, and change of position or injury resulting from such reliance. (Cal. Civ. Code, sec. 2334; *Wiley B. Allen Co.* v. *Wood*, 32 Cal. App. 76 [162 Pac. 121]; *Harris* v. *San Diego Flume Co.*, 87 Cal. 526 [25 Pac. 758].) In the instant case, there is no representation or holding out by the plaintiffs to defendant that Searle had authority to deliver a deed of their property in pursuance of an agreement to sell it. There was no representation made by plaintiffs at all, save in so far as the mere entrustment of the deed constitutes a representation. But, as pointed out by counsel for plaintiffs, the deed might have been handed to Searle for any one of several purposes: to use the property as security for a loan, to exchange it for other property, to sell it, or to place the deed in escrow. In other words, Searle might have been an agent to secure a loan, to effect an exchange, to negotiate a sale, or he might have been a mere messenger to deposit the deed in accordance with the instructions from his principal. It necessarily follows that the equivocal act of entrustment does not amount to a representation of any specific authority on the part of the agent, and certainly not to the broad power contended to exist in the instant case. The only representation which can be said to have been made by plaintiffs as a result of their giving the deed to Searle was that he was their agent or messenger; but it remained for defendant, as in the ordinary case, to inquire into the extent of his authority. Such inquiry would have necessitated the production of the writing which embodied the terms of Searle's employment (and which, by virtue of our statutes, was necessary for any dealing with the real property in question), and an inspection of that writing would have disclosed the limited power which he had.

"These principles are applied to a situation very similar to that presented by the instant case in *MacDonald* v. *Cool*, 134 Cal. 502 [66 Pac. 727]. There Mrs. Cool, the owner of property, made a deed in favor of MacDonald and handed it to the agent, Turner. Turner's instructions, evidenced by a receipt which he gave his principal upon taking the deed, were to deliver it as security for a loan to be obtained for

Mrs. Cool. Turner instead delivered the deed to the grantee to secure his own indebtedness. The court said (p. 504): 'It is contended by the appellant that Mrs. Cool made Turner her agent, and is bound by his acts within the scope of his agency, although his conduct was contrary to some undisclosed intention on the part of the principal. It is also contended that there was an undefined ostensible agency created by merely intrusting the deed to Turner.

" 'The agency, if such there was, is defined in the receipt, and if MacDonald was dealing with Turner as the agent of Mrs. Cool, he should have ascertained the extent of the agency. I see no ground whatever for holding that there was an ostensible agency for any specific purpose.'

"The same view was expressed in *Keele* v. *Clouser*, 92 Cal. App. 526. [268 Pac. 682], where the principal gave the deed to the agent for deposit in escrow, and the agent instead delivered it directly to the grantee. The court said (p. 532): 'The plaintiff's testimony showed that her broker had no authority to make such delivery. His authority extended only to a deposit of the deed with the bank, there to remain in escrow, and hence if he gave possession of it to the defendants his act was not binding upon the plaintiff and did not constitute a delivery of the deed. . . . A broker employed to find a purchaser for real property has no authority to make a contract or a conveyance in behalf of his principal, unless special power is conferred upon him for that purpose (4 Cal. Jur. 564, 565), and hence can have no authority to take one of the essential steps toward a conveyance, such as the delivery of the deed. The delivery here cannot be held good under the doctrine of ostensible agency. The broker was a special agent (Civ. Code, sec. 2297), and it was therefore incumbent on the defendants to inquire as to the extent of his authority (1 Cal. Jur. 715, 744). The delivery of a deed to an agent for the limited purpose of putting it in escrow does not confer on the agent ostensible authority to convert it into a conveyance by delivering it to the grantee, unless there is some further conduct on the grantor's part reasonably indicating to the grantee that the agent has such authority. (*MacDonald* v. *Cool*, 134 Cal. 502 [66 Pac. 727].)'

█ "There is another fact which is fatal to defendant's claim. Said defendant did not rely upon Searle's posses-

sion of the deed in making the contract to sell. This contract was made March 1, solely on the faith of Searle's own representations as to his powers, and without any investigation thereof. It was on March 5 that Searle obtained the deed. It is apparent, therefore, that the possession of the deed is being used as a justification for payment of the purchase price to the agent. There is neither authority nor principle to support such an extraordinary theory. Even if the agent were shown to have had express authority to negotiate a sale, this would not give him implied or ostensible authority to collect the purchase price. (*Schnier* v. *Percival*, 83 Cal. App. 470 [256 Pac. 1109]; *Hicks* v. *Wilson*, 197 Cal. 269 [240 Pac. 289]; *Gold* v. *Phelan*, 58 Cal. App. 471 [208 Pac. 1001].) Hence, even if defendant's first position, contrary to the facts and to the law, were nevertheless conceded, it would simply mean that said defendant would have been justified in paying the money to plaintiffs. If this had been done, the loss resulting from the embezzlement by Searle would never have occurred. That loss, irrespective of plaintiffs' prior acts, was directly caused by defendant itself, in paying the purchase price to the agent instead of to the principal.''

In addition to what was thus said in our former opinion, the following observations should be added. The holding that the mere entrustment of the deed to Searle by the Ernsts did not confer on him ostensible authority to deliver it to the grantee cannot be seriously questioned. The question is not a new one. The cases above cited, and many others that might be referred to, have fully and completely settled this point. Although it is true that the courts, for purposes of expediency, have conferred on certain documents of title such as bearer bonds and stock certificates certain elements of negotiability, and have held that mere possession of them confers authority to transfer them, no good reason has been suggested why this exception to the general rule should be extended to a deed to real property. Our prior decisions have fully established the point that a deed to real property is not a *quasi*-negotiable instrument, and we feel bound by those cases. Moreover, we desire to emphasize the point that the principle enunciated in the last section of the Civil Code, section 3453, so confidently relied on by appellant, to the effect that ''Where one of two

innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer," in no way assists appellant. Here the injury never would have occurred had appellant properly performed the duty imposed upon it by law to investigate the authority of the agent with whom it was dealing. A third person, such as appellant, is not compelled to deal with an agent, but if he does so, he must take the risk. He takes the risk not only of ascertaining whether the person with whom he is dealing is the agent, but also of ascertaining the scope of his powers. The rule is cogently stated in 1 Mechem on Agency, second edition, section 743, page 527, as follows: "An assumption of authority to act as agent for another of itself challenges inquiry. Like a railroad crossing, it should be in itself a sign of danger and suggest the duty to 'stop, look and listen'. It is therefore declared to be a fundamental rule, never to be lost sight of and not easily to be overestimated, that persons dealing with an assumed agent, whether the assumed agency be a general or special one, are bound at their peril, if they would hold the principal, to ascertain not only the fact of the agency but the nature and extent of the authority, and in case either is controverted, the burden of proof is upon them to establish it."

Appellant, evidently with the realization that its contention that Searle as agent of the Ernsts had ostensible authority to deliver the deed is not tenable, has attempted to change completely its theory of the case. On this rehearing almost the sole contention made by appellant is that at all times it dealt with Searle as a principal and not as an agent. Based upon this premise, it is urged that the entrustment of the deed by the Ernsts to Searle conferred on Searle such *indicia* of ownership that a delivery by Searle to the grantee therein named binds the grantors. This contention, in our opinion, is contrary to the facts and clearly contrary to the theory upon which the case was tried. The point was not seriously urged by appellant until the filing of its reply brief. Until that time it appears that it was the theory of all concerned that the question involved was whether Searle as agent of the Ernsts had ostensible authority to deliver the deed and collect the purchase price.

The rule is well settled that the theory upon which a case is tried must be adhered to on appeal. A party is not

permitted to change his position and adopt a new and different theory on appeal. To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant. (2 Cal. Jur., sec. 68, p. 237.)

Moreover, it is our opinion that this new theory is not supported by the evidence. The evidence discloses that appellant, through its agents, knew that Searle was professing to act for other parties and not for himself, although the identity of the principals was not known until the deeds were produced. Conway testified that during the negotiations at a conference at which he, Searle and Hilp and Hefferman, both officers of the Hilbar Properties Company, were present, a question over price arose, and Searle stated that he could given no definite answer until he had *telephoned his client* in Los Angeles. Later Conway sought partially to retract this testimony by the statement that Searle had not stated that he could not agree to the price until he telephoned *his client,* but that the statement was that he could not agree until he 'phoned Los Angeles. This testimony alone, evidently believed by the trial court, is sufficient to sustain the agency theory. Although Conway stated that he did not know Searle was acting as agent, the record shows he had documentary evidence in his possession which clearly informed him that Searle was acting as agent.

However, even if we were to consider appellant's new theory on the merits, it would avail appellant nothing. The facts of this case would no more warrant the belief that Searle was a principal than they do that he was an agent with unlimited powers. The deed was from the Ernsts to appellant. Since the deed was executed by a person other than the person who possessed it, it was incumbent upon appellant to inquire into the authority of the party who held it to deliver it. It cannot be held that a person has *indicia* of ownership unless the document of title names him as the owner or unless the document is negotiable or *quasi* negotiable. To hold that a deed executed by a stranger and naming a third person as grantee confers on its possessor the *indicia* of ownership would be to hold that such a deed is *quasi* negotiable. This, for reasons already given, we are not inclined to do.

The judgment appealed from is affirmed.