[Civ. No. 15080.   Second Dist., Div. Three.   Mar. 21, 1946.]

S. H. STEINBERG, Appellant, v. H. K. BUCHMAN, Respondent.

Samuel Mirman for Appellant.

Newby, Holder & Newby for Respondent.

SHINN, J.—Appeal by plaintiff from a judgment on a directed verdict for defendant. It was alleged in the complaint that plaintiff, a real estate broker, had been engaged by one Epstein to find a purchaser for certain real estate and personal property belonging to Epstein and was to receive a commission of 5 per cent of the first $115,000 of the selling price and 50 per cent of any additional sum received for the property. It was alleged that plaintiff procured defendant as a purchaser, that defendant entered into a written agreement with Epstein to purchase the property for $125,000, and that defendant repudiated the agreement and refused to conclude the purchase. The prayer of the complaint was for damages in the sum of $10,750. The answer admitted the making of the contract of purchase, denied that defendant had repudiated it, and alleged that he had rescinded the contract for good cause.

Plaintiff offered in evidence an agreement by which Epstein appointed him exclusive agent to find a purchaser for the property. It was excluded from evidence upon defendant's

objection. It was not offered for identification and is not contained in the record. We may assume, as counsel do, that it conformed to the agreement alleged in the complaint, which described the property to be sold as "a building, bowling alley, cafe, cocktail room, licenses, good will, fixtures, equipment, and merchandise." The agreement of sale, hereinafter referred to, shows that the land also was included. The complaint alleged that under the employment agreement, "said Morris Epstein agreed to pay to the Plaintiff as commission for his securing a purchaser for said property five per cent (5%) of $115,000.00, plus 50% of all the amounts received by Epstein in excess of $115,000 for the sale of the aforementioned property."

The agreement between Epstein and defendant was in the form of escrow instructions, copy of which was attached to defendant's answer, and the agreement as pleaded was received in evidence. Defendant moved for a directed verdict upon the ground that plaintiff had not proved any agreement in writing subscribed by defendant, employing plaintiff to purchase the property for compensation or a commission, as required by section 1624(5) of the Civil Code, and a direction to the jury to return a verdict for defendant followed the granting of that motion.

Plaintiff, while conceding that it was necessary for him to prove a written agreement of employment subscribed by defendant, relies solely upon the escrow instructions for proof of such an agreement. Those of defendant stated that he was depositing $2,500 cash, would deposit $7,500 within 10 days, $50,000 when the escrow was ready to close, together with his note and trust deed for $65,000, and also a chattel mortgage covering the furniture and other personal property, and they called for a bill of sale of the personal property and a deed to the real property. Taxes and insurance were to be prorated and defendant was to pay the buyer's customary charges, including one-half of the escrow fee. Epstein signed instructions which called for the payment to him of $60,000 in cash and the delivery of the note, trust deed and chattel mortgage. They provided that he would pay his proper recording fees, the cost of procuring evidence of title, and stated, "and you are hereby authorized to pay any bonds, assessments and/or taxes and any encumbrances of record to show title as called for/or necessary to comply with same. Pay to S. H. Steinberg, a licensed real

estate broker, No. ——— whose address is 756 South Broadway, Los Angeles, Calif as a commission the amount called for in agreement to be handed you by him. From funds accruing to my account in this escrow you are instructed to pay to California Bank, 6th & Western Branch, the amount of its demand for reconveyance of deed of trust of record on said property. Issue check for proceeds to Morris Epstein and mail to address below.''

Plaintiff's theories are stated as follows: ''(1) Appellant is entitled to recover on the basis of the purchase contract itself as a direct promise of the respondent to pay appellant a commission; (2) appellant is entitled to recover his commission as a third party beneficiary of the purchase contract under the provisions of section 1559, C. C. P.'' which provides that ''a contract made expressly for the benefit of a third person may be enforced by him at any time before the parties thereto rescind it.''

Neither of these theories finds support in the facts. Defendant did not by the terms of his purchase contract directly or at all assume a personal obligation to pay plaintiff a commission. Defendant did not engage or receive any services of plaintiff as broker and did not agree to pay a commission; he did not agree with plaintiff that he would purchase the property and he was under no moral or legal obligation to pay a commission or to see that plaintiff received one. All defendant agreed to do was to pay the purchase price and his share of the incidental expense. It was no concern of his what Epstein did with the money after it was held to his account by the escrow holder. Epstein's direction that a commission be paid to plaintiff from the proceeds of the sale was no part of the agreement of sale. It could have been stricken from the instructions of Epstein without affecting in the slightest his agreement with defendant. Plaintiff and defendant were complete strangers as to any contractual relationship or duty. Defendant's obligations were distinctly and separately stated in the escrow instructions, and the payment of a commission to plaintiff was not among them. Defendant did not, by the mere act of placing his signature beneath a specification of the things which he agreed to do, assume or join in the separate undertakings of Epstein which were set out in the latter's instructions. Epstein directed disbursement of his money for different purposes, which we have already mentioned. Defendant no more assumed an

obligation for the payment of a commission to plaintiff than he assumed obligations to other creditors of Epstein, such as the company which would write the policy of insurance, the holders of encumbrances on the property, etc. Epstein's direction to the escrow holder for the payment of the commission was expressly for plaintiff's benefit but it was in no sense a contract to which defendant was a party.

No agreement was made expressly or at all for the benefit of plaintiff. It appears from what we have said that defendant deposited his money in escrow with instructions to pay it to Epstein; that was the extent of his agreement and of his responsibility. In other words, he made no agreement with anyone for the payment of plaintiff's commission. Certainly there was nothing in the agreement of purchase which would indicate that defendant agreed to purchase the property expressly or at all for the benefit of plaintiff. It is not enough for plaintiff to show that he would incidentally have been benefited by performance. He was required to prove a contract which was made expressly for his benefit and one in which it clearly appeared that he was the beneficiary. (*Van derHoof* v. *Chambon,* 121 Cal.App. 118, 131 [8 P.2d 925]; *Wilson* v. *Shea,* 29 Cal.App. 788 [157 P. 543]; *Buckley* v. *Gray,* 110 Cal. 339 [42 P. 900, 52 Am.St.Rep. 88, 31 L.R.A. 862].) In this he failed completely.

It would be idle to discuss the rules of law that would be applicable to the case if defendant had engaged the services of plaintiff to assist him in acquiring the property, and had thereby impliedly agreed with plaintiff that he would buy the property if plaintiff could get it for him upon the agreed terms. (See 8 Am.Jur., § 148, p. 1072.) *Traxler* v. *Katz,* 116 Cal.App. 226 [2 P.2d 553]; and *Herman* v. *Savage,* 17 Cal.App.2d 238 [61 P.2d 1195], which are relied upon by plaintiff, were cases in which the broker had acted as the agent of the party who had refused to carry out a contract of exchange and who was held liable to the broker in damages. The opinion in the last case does not state that the broker, plaintiff's assignor, had been employed by and had rendered services to the defendant, but that fact is shown in the briefs, which set forth the agreement of exchange in which it was stated that one of the considerations for defendant's agreement to make the exchange was the services which had been performed by the brokers. The defendant here owed no duty to plaintiff to consummate the purchase of the property and

incurred no liability to plaintiff in refusing to go through with the deal.

█ The case is governed by another rule, which is that a broker who is employed by and acts for only one of the parties to a transaction, and who is unable to collect a commission from his principal because of the failure of the other contracting party to complete the transaction, cannot recover damages from the latter, with whom he has no contract. (8 Am.Jur., § 149, p. 1073; *Brockway-Mecklenburg Co.* v. *Hilderman*, 90 Mont. 317 [2 P.2d 1018]; *Goff* v. *Adelson*, 229 App. Div. 802 [242 N.Y.S. 278]; *Hokar Products Corporation* v. *Griscom & Co. Inc.*, 40 N.Y.S.2d 54; *Giovannoni* v. *Waple & James, Inc.*, 105 F.2d 108.)

The judgment is affirmed.

Desmond, P. J., and Wood, J., concurred.

A petition for a rehearing was denied April 16, 1946, and appellant's petition for a hearing by the Supreme Court was denied May 20, 1946.