JONES et al. v. PHIPPS et al.

No. 32438.   Feb. 17, 1948.

Rehearing Denied March 30, 1948.

*191 P. 2d 196.*

P. D. Erwin, of Chandler, for plaintiffs in error.

M. A. Cox, of Chandler, for defendants in error.

BAYLESS, J. This is an action wherein the plaintiffs seek judgment against the defendant Nathan L. Phipps for specific performance of an alleged contract wherein said defendant agreed to buy 1,200 acres of land in Alabama from one Hoyt Williamson for $40,000, of which $20,000 was to be paid in cash and the balance within ten years, secured by a mortgage, or in lieu thereof, damages for his failure to do so. The defendant bank stands in the position of garnishee because of ancillary injunction proceedings.

The plaintiff Jones is an Oklahoma City real estate dealer; the plaintiff Taylor a real estate dealer of Greensboro, Ala. The defendant Phipps lives at Warwick near Chandler, Okla., in which latter town is located the defendant bank. Hoyt Williamson, the prospective vendor, is a resident of Athens, Ala.

In the latter part of 1944, Jones learned that Phipps was interested in buying a black land farm. He suggested to Phipps that he could locate such a farm for him in Alabama. Because Phipps wanted to see the land, they went to Alabama together. Jones secured the aid of Taylor, who held an option to purchase the Williamson farm. This proved to be the kind of land Phipps wanted at a price he was willing to pay.

About two weeks after their return to Oklahoma, Phipps orally agreed with Jones to buy the farm and gave him a check for $1,000, bearing the endorsement:

"Binder on twelve hundred acres of land in black belt of Alabama to be cashed when title proved good by opinion of a good attorney."

With the assistance of Taylor, Jones secured an abstract which, with the opinion of an Alabama attorney that the title was good, was taken to Phipps for his inspection. On the evening of February 10, 1945, after an examination of the abstract and attorney's opinion, Phipps and his wife executed the purchase price note and mortgage to Williamson and gave Jones a check for $19,000 bearing the endorsement:

"This check to be cashed only after warranty deed has been executed by Hoyt Williamson and mailed to First National Bank of Chandler."

The following week Jones took the checks, note, and mortgage to Alabama, contacted Taylor and Williamson, and the three went to the Peoples' Bank of Greensboro, Ala., on February 17th, and delivered the endorsed checks of Phipps and a warranty deed executed by Williamson and his wife to the bank for collection, with instructions as to the distribution of the money. These were sent by the Alabama bank to the Chandler bank with a collection letter. The note and mortgage were delivered to Williamson, who had the mortgage recorded.

Jones then received a telegram from Phipps stating that he did not want to go through with the deal. On February 21st Phipps wrote to Jones at Greensboro, Ala., advising him that he did not intend to "go ahead" with the purchase.

At Phipps' request, the Chandler bank refused payment and returned the papers.

The Greensboro bank again sent all papers to the Chandler bank and they were returned unpaid. At all times Phipps had a sufficient deposit in the Chandler bank to pay the checks.

Phipps testified that he sent the telegram and letter and stopped payment on the checks for two reasons: First, he and Jones had agreed the transaction was to be completed by February 15th, which had not been done; second, he had lost confidence in Jones.

After Jones returned to Chandler he was informed by the bank that Phipps wanted the abstract further examined. It was sent to a law firm at Tuscaloosa, Ala., selected by Phipps' attorney, Cox. About the middle of April this firm wrote an opinion rejecting the title. This was a contradiction of the opinion of the other attorneys who had approved the same, and whose opinions had been given to Phipps by Jones.

From the cash payment on the purchase price Jones was to have received $4,255, Taylor $2,250, and Williamson $13,495. Phipps at no time ever agreed to pay Jones or Taylor a commission for their services. Basing his refusal to consummate the sale upon the opinion rejecting the title, Phipps refused to complete the transaction. This suit was then filed in the district court of Lincoln county, resulting in judgment for defendants, and plaintiffs appealed.

The contract sued upon was between Williamson, landowner, and Phipps, prospective purchaser. Williamson is not a party to the action. Plaintiff Taylor did not testify in the trial of the case and no claim is made by plaintiff Jones that he and Taylor were real estate agents representing Phipps, nor does he contend that Phipps was to pay their commissions.

Taylor and his subagent, Jones, were real estate brokers expecting to be paid their commissions by the seller.

Jones testified that Taylor had an option to purchase the land in Alabama from Williamson, but there is no testimony showing that said option was ever exercised if in fact one did exist.

Although plaintiffs designate their suit as one for specific performance, in their prayer as well as in their

briefs they are seeking alternative relief in damages for the amount of commissions they were to have received had the sale been consummated.

If plaintiffs are not entitled to their commissions, we do not think it material whether the suit is one for specific performance or whether it is a suit for said commissions. We shall therefore treat this action as an action by plaintiffs to recover the commissions they were to have received from the sale of the land.

Concerning the right of a broker to recover a commission from the purchaser in the absence of an agreement to pay a commission, in the case of Brockway-Mecklenburg Co. v. Hilderman, 90 Mont. 317, 2 P. 2d 1018, it was said:

"In our opinion, supported by logic and well reasoned authorities, a mere selling agent or broker has no such interest in a contract secured by him for the purchase of land belonging to the broker's client as will authorize recovery of damages by the broker from a prospective purchaser for lost commissions upon breach of the contract by the purchaser."

The land in the case at bar was located in Alabama and the court there has passed specifically upon this question in the case of Messer-Johnson Realty Co. v. Newman, 210 Ala. 340, 98 So. 20, wherein the court said:

"The allegations . . . are consistent with the theory that plaintiff as a real estate agency was engaged by one Hasty, the owner of certain real estate in the City of Birmingham, to sell said property and be compensated by way of a commission out of the purchase money; that the defendant as a prospective purchaser agreed to view the property with the plaintiff, stating that he would purchase at the quoted price if found suitable; that defendant did view the property, agreed to buy the same and entered into a contract of purchase with the owner therefor, but subsequently declined to consummate the trade and that the defendant was aware of the fact that plaintiff was to receive compensation by way of commissions out of the purchase money. The counts fail to show any contract of binding force entered into by the plaintiff and defendant, or that the defendant requested the services of the plaintiff."

See Harling v. Tift, 43 Ga. App. 94, 157 S.E. 914.

In the case of Steinburg v. Buchman, 73 Cal. A. 2d 605, 167 P. 2d 207, the court held:

"A prospective purchaser not engaging broker and not assuming payment of commissions in purchase contract, and not agreeing with broker to pay commission, owed no duty to broker to consummate the purchase of the property and incurred no liability to broker in refusing to go through with the purchase."

See Giovannoni v. Waple & James, 105 Fed. 2d 108, 70 App. D.C. 299; Olsen v. Throckmorton, 105 Fed. 2d 110, 70 D.C. 231.

We recognized this principle of law in Danciger Oil & Refining Co. v. Wayman, 169 Okla. 534, 37 P. 2d 976, when we said:

"We find no fault with the authorities cited by the defendant holding that a broker cannot recover from a prospective purchaser for loss of commission by reason of failure of a prospective purchaser to comply with his contract of purchase on the theory that there is no privity of contract between the broker and prospective purchaser, when the cause of action is based upon a contract between the seller and the prospective purchaser."

Since said brokers under the authorities above cited were not entitled to a commission from Phipps, we do not think the fact that they denominate their suit as one for specific performance alters the rule to such an extent that they should be entitled to their commissions in such an action, since, as said in Danciger Oil & Refining Co. v. Wayman, supra, there was no privity of contract between the parties.

Judgment affirmed.

HURST, C.J., DAVISON, V.C.J., and RILEY, WELCH, CORN, GIBSON, and ARNOLD, JJ., concur.