[Civ. No. 27825. First Dist., Div. Two. Jan. 17, 1972.]

JOHN F. DONNELLAN, Plaintiff and Respondent, v.
PATRICK ROCKS et al., Defendants and Appellants.

926

**COUNSEL**

Molinari, Casalnuovo & Berger and Gary P. Vannelli for Defendants and Appellants.

Vernon W. Humber for Plaintiff and Respondent.

**OPINION**

**KANE, J.**—Desirous of trading their two-unit residential property for a larger building, appellants contacted the office of respondent, a licensed real estate broker, and entered into an exclusive listing agreement with him which three months later was changed into a multiple listing agreement. Under these agreements, respondent spent considerable time and effort in behalf of appellants, expending funds for advertisements and

showing appellants' property on 20 to 30 occasions for business rental, sale or trade.

Finally, in April 1966, respondent found a suitable four-unit building owned by Mr. and Mrs. Bank (Bank property) on which appellants made a written offer of purchase in the form of a deposit receipt dated April 9, 1966 and designating the Rocks' property as a trade-in item.

The offer of purchase was accepted by Bank with the exception of taking appellants' property in trade and on the further condition that appellants assume the existing financing on the Bank property. Appellants acceded to both conditions. They executed an application to Bayview Federal in order to take over the loan on the Bank property which application was subsequently approved by Bayview Federal. Since Bank would not take appellants' property in trade as a downpayment, respondent agreed to purchase it on his own account for a guaranteed net cash amount of $7,000 over the existing deeds of trust. The terms of this agreement were included in a separate deposit receipt dated April 14, 1966, which was signed by appellants and respondent.

In order to raise the $7,000 cash and facilitate the Rocks-Bank transaction, respondent was compelled to (1) borow the money, paying a loan fee of $480 and hypothecating his own property as security therefor, and (2) advance $500 earnest money for the benefit of Rocks. In consideration of these actions, appellants expressly promised to pay respondent the sum of $1,470, which promise was contained in the April 14 deposit receipt.

On May 6, 1966 the escrow was completed and ready to close on both transactions. Appellants, however, refused to go through with the transactions on account of personal reasons. Respondent initiated this action to recover the sum of $1,470 as stipulated in the April 14 deposit receipt and the sum of $3,653.73, representing 6 percent of the sale price set forth in the April 9 deposit receipt. The trial court awarded judgment in those amounts.

I. *"Commission" due under the April 14, 1966 deposit receipt.*

■ A) Appellants first argue that, contrary to the trial court's finding, respondent is not entitled to the consideration promised in the April 14 deposit receipt because in purchasing the Rocks' property he was acting in a fiduciary capacity, and by securing an advantage in the form of "commission" he breached his fiduciary duty towards appellants as his principals. This contention is untenable for several reasons:

(1) Appellants seek to raise the issue of violation of fiduciary duty

for the first time on appeal. This they may not do. (*Ernst* v. *Searle* (1933) 218 Cal. 233, 240-241 [22 P.2d 715]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 281.)

(2) Appellants admit in their closing brief that "Respondent was not a real estate broker in the April 14 deposit receipt, but was acting as a principal." It follows that since the transaction was not had by virtue of any agency, and the agreed upon sum was not commission but consideration of services, the rules of fiduciary relationship are not applicable at all.

(3) Finally, even assuming, arguendo, that respondent was an agent in this transaction, appellants' position is not supported by law or the facts of the case. ▆ It is well settled that while an agent owes a duty of acting in the highest good faith towards his principal (*Batson* v. *Strehlow* (1968) 68 Cal.2d 662, 675 [68 Cal.Rptr. 589, 441 P.2d 101]), the agent nonetheless may acquire property from his principal provided the agent makes full disclosure of all material facts concerning the transaction which might affect the principal's decision. (*Helbing* v. *Helbing* (1948) 89 Cal.App.2d 224, 227 [200 P.2d 560]; *Rattray* v. *Scudder* (1946) 28 Cal. 2d 214, 222-223 [169 P.2d 371, 164 A.L.R. 1356]; Civ. Code, § 2230.) ▆ In the instant case, respondent at all times revealed to appellants that he was dealing in his own name with regard to the purchase of the Rocks' property and the April 14 deposit receipt signed designated him as a buyer.

B) The April 14 deposit receipt obligated respondent to make an earnest money deposit of $500 evidenced by a personal check in that amount. The deposit receipt also provided that time was of the essence of the agreement. Although the deposit receipt recites that appellants received the earnest money, appellants contend, and respondent admits, that said amount was not deposited at the time of the execution of the deposit receipt but only on May 8, 1966. Based upon these facts, appellants argue that by failing to comply with "the time is of the essence" clause of the deposit receipt, respondent breached the contract and is not entitled to the bargained for consideration. We disagree.

▆ The law is settled that when it appears from the agreement that the parties have made time of the essence, strict performance is required *unless it is excused*. (*Weisberg* v. *Ashcraft* (1963) 223 Cal.App.2d 793, 795 [36 Cal.Rptr. 188].) However, it is equally well established that the law does not require the performance of an idle act and a formal tender of performance is excused by the refusal in advance of the party to accept the performance. (*Beverage* v. *Canton Placer Mining Co.* (1955) 43 Cal.2d 769, 777 [278 P.2d 694].)

■ Here the deposit receipt requiring the deposit of $500 in escrow was executed in the evening of April 14. The record also discloses that appellants repudiated the contract the following morning before respondent could have reasonably complied with his contractual obligation. Therefore, appellants brought themselves within the rule that where a party to a contract prevents the fulfillment of a condition precedent or its performance by the adverse party, he cannot rely on such condition to defeat his liability. (*Overton* v. *Vita-Food Corp.* (1949) 94 Cal.App.2d 367, 371 [210 P.2d 757].)

## II. *Commission under the April 9, 1966 deposit receipt.*

■ This deposit receipt was signed by appellants (buyers), respondent (broker), and the seller. The deposit receipt provides for a broker commission payable by the seller in the following language: "The undersigned Seller accepts the above offer and agrees to sell the above described property on the terms and conditions herein stated and agrees to pay the above named agent as commission the sum of 6% of Selling Price . . . or one-half the amount paid by Buyer in case same is retained by Seller as consideration for the execution hereof, provided such one-half shall not exceed the full amount of the commission."

Appellants now argue that (1) since the promise to pay the commission was made by the seller, respondent may not turn against appellants-buyers because they did not assume any obligation to pay said commission; (2) the deposit receipt was not a third party beneficiary contract for the benefit of respondent; or (3) in the alternative, even if it was a third party beneficiary contract, respondent's right to a commission is limited to one-half of the earnest money deposited. There is no substance to these contentions.

■ A contract made expressly for the benefit of a third party may be enforced by him at any time before the parties rescind it. (*Shell* v. *Schmidt* (1954) 126 Cal.App.2d 279, 290 [272 P.2d 82]; Civ. Code, § 1559.) ■ Thus, an agreement between a vendor and purchaser which expressly provides for the payment of a commission to a broker makes the broker a third party beneficiary. (*Lundeen* v. *Nowlin* (1912) 20 Cal.App. 415 [129 P. 474]; *Calhoun* v. *Downs* (1931) 211 Cal. 766 [297 P. 548]; *Watson* v. *Aced* (1957) 156 Cal.App.2d 87 [319 P.2d 83]; *Lane* v. *Davis* (1959) 172 Cal.App.2d 302 [342 P.2d 267].)

Cases such as *Steinberg* v. *Buchman* (1946) 73 Cal.App.2d 605, 610 [167 P.2d 207], and *Hunter* v. *Vernon* (1948) 85 Cal.App.2d 525 [193 P.2d 139], relied upon by appellants are distinguishable from the case

at bench in that here the broker was retained originally by, and performed services for, the buyers. The *Steinberg* court itself recognizes this distinction when, at page 609, it says: "It would be idle to discuss the rules of law that would be applicable to the case if defendant [purchaser] had engaged the services of plaintiff to assist him in acquiring the property, and had thereby impliedly agreed with [the] plaintiff that he would buy the property if plaintiff could get it for him upon the agreed terms."

Indeed, in such a situation envisaged in *Steinberg,* the courts both in California and elsewhere have held the buyer liable for the broker's commission. In *Herman* v. *Savage* (1936) 17 Cal.App.2d 238 [61 P.2d 1195], plaintiff broker, who was employed by defendant to obtain a party for the exchange of property, was promised by the other party to pay his commission. Defendant (the nonpromisor party) repudiated the agreement of exchange without legal justification. The court held defendant liable for the commission promised by the other party under the exchange agreement. (See to the same effect: *Traxler* v. *Katz* (1931) 116 Cal.App. 226 [2 P.2d 553]; cf. *Coffman* v. *Crookshank* (1934) 140 Cal.App. 192 [34 P.2d 1067].) In *Tanner Associates, Inc.* v. *Ciraldo* (1960) 33 N.J. 51 [161 A.2d 725], defendant employed the broker for the specific purpose of locating suitable land on terms which defendant could meet. After inspecting the land and accepting the broker's services defendant signed the agreement of sale, under the terms of which the seller was to pay the broker's commission. Defendant repudiated the contract without cause.

The court, holding defendant liable for the commission, pointed out that when a prospective buyer solicits a broker to find or to show him property and the broker finds property satisfactory to the buyer which the owner agrees to sell at the price offered, and the buyer knows that the broker will earn a commission from the owner, the law will imply a promise on the part of the buyer to complete the transaction with the owner. If he fails or refuses to do so without a valid reason and thus prevents the broker from earning the commission from the seller, he becomes liable to the broker for breach of the implied promise. (See also: *Ellsworth Dobbs, Inc.* v. *Johnson* (1967) 50 N.J. 528 [236 A.2d 843, 30 A.L.R.3d 1370]; *Treadaway* v. *Piazza* (La.App. 1963) 156 So.2d 328; *Brawner* v. *Cumbie* (Tex. Civ. App. 1924) 264 S.W. 497; *McKnight* v. *McGuire* (1921) 117 Misc. 306 [191 N.Y.S. 323].)

The facts of the instant case do not leave the slightest doubt that respondent falls within this rule.

Our conclusion reached here also answers appellants' alternative argument contending that they could be held liable only for one-half of the deposited $500 earnest money. Since the basis of appellants' liability here is a

breach of their implied promise to perform the main contract, we hold that the damages which may be recovered by respondent should be measured by the amount of commission which would have been earned had appellants performed according to their agreement. (Cf. *Tanner Associates, Inc.* v. *Ciraldo, supra,* 161 A.2d at p. 734.)

The judgment is affirmed.

Taylor, P. J., and Rouse, J., concurred.