[No. H007424. Sixth Dist. Dec. 23, 1991.]

PAK-SOON CHAN, Cross-complainant and Appellant, v. MICHAEL K. TSANG, Cross-defendant and Appellant.

COUNSEL

Keller & Clark and Stephen B. R. Keller for Cross-complainant and Appellant.

Grayson S. Taketa for Cross-defendant and Appellant.

OPINION

ELIA, J.—Buyer agreed to purchase a shopping center from Seller but later changed his mind. Buyer's real estate broker sued Buyer for his commission. Broker was awarded judgment in the amount of $10,000. Both Buyer and Broker appeal.[1] We modify the judgment to increase the amount recovered by Broker to $100,000, and remand the matter to the trial court to determine the issue of attorney's fees and costs.

### FACTS AND PROCEDURAL BACKGROUND

Buyer informed Broker that Buyer was interested in acquiring commercial property. Broker located several properties. Broker showed these properties to Buyer but no purchase resulted.

---

[1]Buyer is Michael K. Tsang. Seller is Mountain View Center Associates. Pak-Soon Chan is the real estate broker. For convenience, we will simply refer to the parties, respectively, as Buyer, Seller, and Broker.

Broker then located Seller's property. Broker contacted Seller's broker and inspected the property. Broker told Buyer about the property. Buyer liked the property, and Broker submitted an offer to Seller. Seller accepted the offer.

The purchase price was $4 million. The purchase agreement provided that if Buyer defaulted, Seller would retain the $20,000 deposit as liquidated damages.[2] The purchase agreement also provided that Seller had employed Broker, and that Seller would pay Broker 6 percent of the sale price as commission, "payable as follows: (a) On recordation of the deed or other evidence of title or (b) if completion of sale is prevented by default of Seller, upon Seller's default or (c) if completion of sale is prevented by default of Buyer, only if and when Seller collects damages from Buyer, by suit or otherwise, and then in an amount not to exceed one-half of the damages collected provided same shall not exceed the full amount of the commission but same shall not constitute a waiver of any right to a commission under a listing agreement . . . SEE ADDENDUM ATTACHED"[3] The attached addendum provided that the 6 percent commission would be divided between

---

[2]The purchase agreement provided, "(8) DEFAULT: If Buyer fails to complete said purchase as herein provided by reason of any default of Buyer, Seller shall be released from his obligation to sell the property to Buyer and may proceed against Buyer upon any claim or remedy which he may have in law or equity; provided, however, that by placing their initials here Buyer: (. . .)(. . .) Seller (. . .)(. . .) agree that Seller shall retain the deposit as his liquidated damages. If the described property is a dwelling with no more than four units, one of which the Buyer intends to occupy as his residence, Seller shall retain as liquidated damages the deposit actually paid, or an amount therefrom, not more than 3% of the purchase price and promptly return any excess to Buyer. Buyer . . . does not . . . intend to occupy subject property as his residence." (Initials contained in the original purchase agreement are omitted here.)

[3]With respect to the commission, the full text of the purchase agreement was: "ACCEPTANCE: The undersigned Seller accepts the foregoing offer and agrees to sell the property described herein on the terms and conditions stated herein. The undersigned Seller has employed Broker named below and for Broker's services agrees to pay Broker, a flat fee of __ or *Six* percent of the above sales price as a commission, payable as follows: (a) On recordation of the deed or other evidence of title or (b) if completion of sale is prevented by default of Seller, upon Seller's default or (c) if completion of sale is prevented by default of Buyer, only if and when Seller collects damages from Buyer, by suit or otherwise, and then in an amount not to exceed one-half of the damages collected provided same shall not exceed the full amount of the commission but same shall not constitute a waiver of any right to a commission under a listing agreement. If property is sold by a Sub-Agent of Broker, Broker agrees to pay a portion of the commission to such Sub-Agent as specified in the listing agreement, or if no listing agreement, as agreed to in writing by the Brokers concerned. SEE ADDENDUM ATTACHED"

Attached as an addendum was the following:

"Real estate commission to be 6%, payable as follows:

"50% in cash at close of escrow. In the event Buyer comes up with more than $1,400,000 down payment, the increased amount will go to reduce Broker's note.

"50% in note payable, interest only monthly. Note to be a portion of Seller's note secured by the Property.

Broker and two other entities. Broker was to receive 2½ percent of the $4 million purchase price, or $100,000.

Buyer subsequently refused to complete the transaction. Seller filed suit against Buyer and Broker. Seller alleged that Buyer had failed to perform his obligations under the purchase agreement. Seller also alleged that Broker was Buyer's agent.

Buyer and Broker cross-complained against each other, alleging fraud and seeking indemnity and attorney's fees. Broker also sought $100,000 from Buyer. Broker alleged that there was an implied promise that if he located property for Buyer, and if Seller agreed to sell at the price offered, then Buyer would complete the transaction so that Broker could recover his commission from Seller. Broker alleged that Buyer failed to complete the transaction and therefore owed Broker the amount of the commission. Broker alleged the commission was 2½ percent of the $4 million purchase price ($100,000).

The action was bifurcated. Seller obtained a $20,000 judgment against Buyer, plus prejudgment interest. This amount represented Buyer's deposit. The judgment has been affirmed on appeal (Sixth District Court of Appeal No. H002986) and satisfied in full.[4]

A court trial was held on Broker's cross-complaint against Buyer. Broker sought $100,000, plus attorney's fees. Although the trial court entered judgment for Broker, it did not award him $100,000. The court concluded that Broker was entitled to one half of the $20,000 damages collected by Seller from Buyer. Thus, Broker was awarded $10,000.

Both Broker and Buyer appealed. On January 31, 1990, we reversed because the trial court had failed to enter a statement of decision after timely requests. (Sixth District Court of Appeal No. H002986) The matter was remanded to the trial court.

On remand, both parties submitted proposed statements of decision. The trial court signed the statement submitted by Buyer. Among other things, the trial court concluded that Broker was the prevailing party, and entered judgment awarding Broker $10,000.

---

"Commission to be paid as follows:
"2-1/2% California Investment Co.
"2-1/2% Pak-Soon Chan
"1% Lexington Investment Co., Inc."
[4]Seller subsequently dismissed its complaint as to Broker. Buyer dismissed his cross-complaint against Broker.

Both parties appeal.

## STANDARD OF REVIEW

■ "A judgment or order of the lower court is presumed correct. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error." (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 268, p. 276.)

If facts are not in dispute, the issue is one of law. If the issue is one of law, then the appellate court is free to reach its own conclusions of law from the undisputed facts. (*Jongepier* v. *Lopez* (1983) 142 Cal.App.3d 535, 538 [191 Cal.Rptr. 131].) Examples of questions of law include the construction and application of a statute and the interpretation of a written instrument. (*Dean W. Knight & Sons, Inc.* v. *State of California* ex rel. *Dept. of Transportation* (1984) 155 Cal.App.3d 300, 305 [202 Cal.Rptr. 44]; *King* v. *Larsen Realty, Inc.* (1981) 121 Cal.App.3d 349, 356 [175 Cal.Rptr. 226].)

## DISCUSSION

■ Broker contends the trial court erred in awarding him $10,000. He argues that he is entitled to $100,000, which was the amount of the agreed commission. Buyer contends Broker is entitled to $4,166.67. This amount represents Broker's pro rata share of the $20,000 deposit, as set forth in the contract and contract addendum. For reasons we shall explain, we conclude that Broker may recover the full $100,000 commission.

■ Although it is generally the seller's responsibility to pay the broker whatever commissions are due, in certain circumstances the broker may recover from a defaulting buyer. If the broker is retained by the buyer, locates property for the buyer, and the seller agrees to sell at the price offered, then the buyer impliedly promises to complete the transaction so that the broker can recover the commission. If the buyer subsequently defaults, the broker can recover the full commission from the buyer based upon breach of the implied promise. This theory of recovery has also been described in third party beneficiary terms. In other words, the broker is alleged to be a third party beneficiary of the purchase agreement between the buyer and seller. (Cal. Real Property Sales Transactions (Cont.Ed.Bar 1981) § 2.43, p. 104; 1 Miller & Starr, Cal. Real Estate (2d. ed. 1989) § 2:35, p. 641; *Donnellan* v. *Rocks* (1972) 22 Cal.App.3d 925 [99 Cal.Rptr. 692].)

### A. *Donnellan* v. *Rocks*

This reasoning led to recovery in *Donnellan* v. *Rocks, supra,* 22 Cal.App.3d 925. In *Donnellan,* buyers sought to trade their property for a

larger building. They contacted broker, and entered into a multiple listing agreement with him. Broker spent considerable time and effort on behalf of buyers. Finally, broker found a suitable property. Buyers' written offer to purchase was set forth in a deposit receipt dated April 9, 1966, and designated buyers' property as a trade-in item. (*Id.* at pp. 927-928.)

Sellers accepted the offer subject to certain conditions. Sellers objected to taking buyers' property in trade, and also conditioned the deal on buyers assuming the existing financing on sellers' property. Buyers agreed to these conditions.

Buyers applied to Bank to take over the loan on sellers' property. Bank approved the application. Because sellers would not take buyers' property in trade, broker agreed to purchase it for "a guaranteed net cash amount of $7,000 over the existing deeds of trust." (22 Cal.App.3d at p. 928.) This agreement was set forth in a separate deposit receipt dated April 14, 1966. Buyers and sellers signed this deposit receipt.

In order to raise the $7,000, broker had to borrow money, pay a loan fee and use his own property as security. Broker also had to advance $500 earnest money for the benefit of buyers. In consideration of these actions, buyers agreed to pay broker $1,470 as stipulated in the April 14 deposit receipt. (22 Cal.App.3d at p. 928.)

After escrow was completed and the transaction was ready to close, buyers refused to proceed. (22 Cal.App.3d at p. 928.) Broker filed suit to recover: (1) the $1,470 as stipulated in the April 14 deposit receipt; and (2) "the sum of $3,653.73, representing 6 percent of the sale price set forth in the April 9 deposit receipt." (22 Cal.App.3d at p. 928.)

On appeal, buyers first argued that broker was not entitled to the $1,470 set forth in the April 14 deposit receipt. They argued that he was acting in his fiduciary capacity when he purchased buyers' property, and by obtaining the $1,470 he breached his fiduciary capacity toward buyers as principals. (22 Cal.App.3d at p. 928.)

The court rejected this claim. First, the court noted that this argument was raised for the first time on appeal. Second, the court stated that broker was acting as a principal when he purchased buyers' property. Thus, the court stated that the $1,470 "was not commission, but consideration of services, [and therefore] the rules of fiduciary relationship are not applicable at all." (22 Cal.App.3d at p. 929.) Third, the court reasoned that even if broker was an agent with respect to this part of the transaction, he could "nonetheless

. . . acquire property from his principal provided the agent makes full disclosure of all material facts concerning the transaction which might affect the principal's decision." (*Ibid.*) Because broker had made full disclosure to buyers, there was no impropriety in broker recovering the $1,470.

The *Donnellan* court next considered broker's right to recover his 6 percent commission under the terms of the April 9 deposit receipt. The court noted that the deposit receipt provided for a broker commission payable by the *seller*. The receipt provided: " 'The undersigned Seller accepts the above offer and agrees to sell the above described property on the terms and conditions herein stated and agrees to pay the above named agent as commission the sum of 6% of Selling Price . . . or *one-half the amount paid by Buyer in case same is retained by Seller as consideration for the execution hereof, provided such one-half shall not exceed the full amount of the commission.*' " (22 Cal.App.3d at p. 930, italics added.)

Based upon this provision, buyers argued that: (1) sellers had promised to pay the commission and therefore the broker could not recover from buyers; (2) the deposit receipt was not a third party beneficiary contract for broker's benefit; and (3) even if it was a third party beneficiary contract, broker's right to a commission was limited to one-half of the earnest money deposited. (22 Cal.App.3d at p. 930.)

The court rejected these claims. It reasoned, "A contract made expressly for the benefit of a third party may be enforced by him at any time before the parties rescind it. [Citations.] Thus, an *agreement between a vendor and purchaser which expressly provides for the payment of a commission to a broker makes the broker a third party beneficiary.*" (22 Cal.App.3d at p. 930, italics added.)

The court determined that buyers were bound both under the third party beneficiary theory and by their implied promise to complete the transaction. In discussing the implied promise, the court relied on *Tanner Associates, Inc. v. Ciraldo* (1960) 33 N.J. 51 [161 A.2d 725].) In that case, the buyer employed broker to locate land. Buyer inspected the land, accepted broker's services, and signed an agreement of sale, "under the terms of which the seller was to pay the broker's commission." (22 Cal.App.3d at p. 931.) Buyer then repudiated the contract without cause. *Donnellan* agreed with the conclusion reached in *Tanner*: "[W]hen a prospective buyer solicits a broker to find or to show him property and the broker finds property satisfactory to the buyer which the owner agrees to sell at the price offered, and the buyer knows that the broker will earn a commission from the owner, the law will imply a promise on the part of the buyer to complete the transaction with the

owner. If he fails or refuses to do so without a valid reason and thus prevents the broker from earning the commission from the seller, he becomes liable to the broker for breach of the implied promise." (22 Cal.App.3d at p. 931.)

Finally, the court rejected the contention that buyers were liable only for one-half of the deposit, which was set forth in the deposit receipt obligating sellers to pay broker's commission. It concluded, "Since the basis of [buyer's] liability here is a breach of their implied promise to perform the main contract, we hold that the damages which may be recovered by [broker] should be measured by the amount of commission which would have been earned had [buyers] performed according to their agreement." (22 Cal.App.3d at pp. 931-932.)

## B. *Other Authorities*

In *Herman* v. *Savage* (1936) 17 Cal.App.2d 238 [61 P.2d 1195], broker also recovered under an implied promise theory. In *Herman*, defendant had employed broker to obtain a party for the exchange of property. The exchange agreement between defendant and the other party provided that the other party should pay broker's commission. Defendant subsequently repudiated the agreement without justification. Defendant argued it was not responsible for the commission because the exchange agreement provided that the other party was responsible for it. The court rejected this contention, stating, "It appears to be well settled, however, that where as here the party who is not obligated to pay the commission repudiates the transaction without legal justification he becomes liable for the payment of the commission. [Citation.]" (*Id.* at p. 243; see also *Traxler* v. *Katz* (1931) 116 Cal.App. 226 [2 P.2d 553].)

"*When the prospective purchaser solicits the broker* to find or show him property, and the broker finds property satisfactory to the purchaser which the owner agrees to sell at the price offered, and the purchaser knows that the broker will earn a commission from the owner on the consummation of the transaction, a promise is implied on the part of the purchaser to complete the transaction with the owner. If he fails [or refuses] to purchase the property without a valid reason, *he becomes liable to the broker* for a breach of his implied promise and the broker's damages are measured by the amount of the commission he would have earned if the buyer had performed. [¶] The same reasoning applies to a situation where the broker was employed by the *seller* under an oral listing and the buyer agreed in the sales contract to pay the broker's commission. In such a case, there would be an implied promise on the part of the seller to complete the transaction so as not to deprive the broker of his commission. [¶] However, where there has been no such

pre-existing relationship between the purchaser and the broker, the courts have refused to find the existence of such an *implied* promise and have denied the broker his commission upon the purchaser's default." (1 Miller & Starr, Cal. Real Estate, *supra,* § 2:35, pp. 641-642, fns. omitted.)

"Under both listing and purchase agreements, the prevalent practice is to require that the seller pay whatever commissions are due. If the broker is retained by the buyer, however, and broker locates property which the owner agrees to sell at the price offered, the law implies a promise by the buyer to complete the transaction and treat the broker as a third party beneficiary of the purchase agreement between buyer and seller. If the buyer then breaches the purchase agreement he becomes liable to the broker for the commission. [Citations.] Moreover, the broker's recovery *is not limited to one-half of the deposit* [citation]; *he is entitled to the commission he would have earned if the buyer had performed.*" (Cal. Real Property Sales Transactions, *supra,* § 2.43, p. 104, italics added.)

 We believe the rule described by the above authorities is fully applicable in these circumstances. Buyer retained Broker, Broker located property for Buyer, Buyer agreed to purchase but then refused to complete the transaction without cause. Thus, Buyer is liable to Broker for the commission Broker would have received from Seller had Buyer performed. As the authorities above establish, Broker's right to recover is premised upon Buyer's breach of the implied promise or alternatively upon Broker's status as a third party beneficiary of the contract between Buyer and Seller.

### C. *Buyer's Contentions*

Buyer raises several arguments against Broker's recovery. He argues that the acceptance clause governs Broker's commission, that *Donnellan* is distinguishable, and that any implied promise violates the contractual integration clause. We consider these contentions below.

First, Buyer's argument regarding the acceptance clause flies in the face of the authorities discussed above. In *Donnellan* and the other authorities, as in this case, the purchase agreement contained a promise by the seller to pay the broker's commission. This did not affect the court's decision that buyer was liable to broker.

Second, the clause governs *Seller*'s obligation to Broker. It imposes no express obligation on Buyer regarding Broker's commission. The clause permits Broker to recover from *Seller* in three different situations: (1) when the deed is recorded; (2) when the Seller defaults; and (3) when the Buyer

defaults. In the first two situations, the Broker is entitled to the full commission.

In the third situation, Broker can recover from the Seller "only if and when Seller collects damages from Buyer, by suit or otherwise, and then in an amount not to exceed one-half of the damages collected provided same shall not exceed the full amount of the commission . . . ." Thus, if Seller does not collect from Buyer, Broker recovers nothing from Seller. Conversely, if Seller recovers $20,000 as liquidated damages, then *Seller* would owe Broker one-half of that amount (prorated between brokers). Thus, the contract sets forth *Seller's* duty to pay Broker's commission. It does not refer to an obligation of Buyer.

As previously noted, the seller usually pays the broker's commission. Thus, a contract provision, such as the one here, is generally fully applicable. In other words, in most cases a broker would be unable to recover from the defaulting buyer, but would look to the seller for recovery. This is because usually there is no preexisting relationship between the buyer and broker.

The situation is different, however, when the broker has been retained by the buyer. In that case, there is a preexisting relationship between them. For this reason, there is an implied promise on the part of the buyer to complete the transaction so that the broker can recover the commission from the seller. Alternatively, the broker may be regarded as a third party beneficiary of the contract between the buyer and seller. As the authority discussed in the preceding portion of this opinion demonstrates, in these circumstances the broker may recover from the defaulting buyer.

Moreover, given these circumstances, it is only fair to imply a promise on the part of the buyer to complete the transaction. Otherwise, the contract clause would allow the broker to recover the full commission if the seller defaulted even though the broker had no preexisting relationship with the seller, but would only allow the broker to recover his share of the deposit if the buyer defaulted even though the broker was retained by the buyer, and despite the fact of their preexisting relationship. This would be an anomalous result.

Buyer argues that *Donnellan* is distinguishable. In *Donnellan,* the broker purchased the buyers' property to facilitate the buyers' purchase of sellers' property. Although these circumstances are different from the circumstances here, these differences are not dispositive. There was no reference to these differences in the *Donnellan* court's analysis of the buyers' liability to the

broker for the 6 percent commission. Similarly, in discussing the rule, the other authorities cited do not mention these aspects of the *Donnellan* decision. (See, e.g., Cal. Real Property Sales Transactions, *supra*, § 2.43, p. 104; 1 Miller & Starr, Cal. Real Estate, *supra*, § 2:35, pp. 641-642, fns. omitted.)

Buyer next contends that the implied promise violates the integration clause in the agreement. We disagree. As noted above, the implied promise is simply a promise on the part of Buyer to complete the transaction with Seller so that Broker may obtain the commission from Seller. There is nothing in this promise which contradicts the terms of the written agreement. (Cf. *Gerdlund* v. *Electronic Dispensers International* (1987) 190 Cal.App.3d 263, 270 [235 Cal.Rptr. 279].) To make this point even clearer, if Broker is viewed as a third party beneficiary, rather than the recipient of the implied promise, it is obvious that the integration clause does not affect Broker's right to recover his commission. An integration clause cannot preclude recovery by a third party beneficiary to a contract.

In sum, we conclude that Broker is entitled to his full commission. Buyer solicited Broker's services, Broker obtained property for Buyer, Buyer entered into an agreement to purchase but then defaulted without justification. Consequently, Buyer breached his implied promise to complete the transaction, and therefore Broker is entitled to recover from Buyer the commission he would have earned had Buyer performed. The amount of that commission is 2½ percent of the $4 million purchase price, or $100,000.[5]

### D. *Attorney's Fees and Costs*

Broker argues that he is entitled to his attorney's fees and costs. Although the trial court's judgment awarded attorney's fees and costs to Broker, the court subsequently granted Buyer's motion to tax costs. Both Broker and Buyer agree that one reason the trial court granted the motion was Code of Civil Procedure section 1033, subdivision (a).

The statute provides, "In the superior court, costs or any portion of claimed costs shall be determined by the court in its discretion in accordance with Section 1034 where the prevailing party recovers a judgment that could have been rendered in a court of lesser jurisdiction." (Code Civ. Proc., § 1033, subd. (a).)

Thus, the trial court granted the motion because Broker recovered $10,000, which was less than the $25,000 jurisdictional amount in superior

---

[5]Because we conclude Broker is entitled to $100,000, we need not consider Buyer's argument that Broker's recovery should be reduced to $4,166.67 pursuant to the contract addendum.

court. Because we conclude that Broker is entitled to the full $100,000, the jurisdictional prerequisite is met. Accordingly, we conclude that the trial court must reconsider the issue of attorney's fees and costs.

CONCLUSION

The judgment is modified to increase the amount recovered by Broker from $10,000 to $100,000, and the matter is remanded to the trial court to determine the issue of attorney's fees and costs.[6] Costs to Broker.

Agliano, P. J., and Cottle, J., concurred.

A petition for a rehearing was denied January 9, 1992, and the petition of appellant Michael K. Tsang for review by the Supreme Court was denied March 11, 1992.

---

[6]We modify the judgment rather than reverse. (See *Snapp* v. *State Farm Fire & Cas. Co.* (1964) 60 Cal.2d 816 [36 Cal.Rptr. 612, 388 P.2d 884] [Trial court found insurer liable for less than policy limit. Appellate court held that insurer was liable for entire limit and reversed with directions to increase judgment. The California Supreme Court stated that appellate court "could and perhaps should have formally modified the first judgment." (*Id.* at p. 821.) The distinction between modification and reversal impacted upon interest upon the judgment.].)